UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:

**FERREL L. AGARD**,

*Debtor.*

Chapter 7

Case No. 10-77338-REG

### MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S MOTION TO INTERVENE AND RIGHT TO EXECUTE AN ASSIGNMENT OF MORTGAGE TO U.S. BANK, AS TRUSTEE

By Order to Show Cause, granted December 10, 2010, this Court granted Mortgage Electronic Registration Systems, Inc.'s ("MERS") request for a hearing on MERS' Motion to Intervene in the instant action, and directed MERS to file a brief in support of its motion to intervene and in support of its authority to execute an assignment of mortgage. MERS respectfully submits that, for the reasons stated herein and in the Affirmation of William C. Hultman, dated December 10, 2010, together with Exhibits A through G, inclusive, (the "Hultman Aff."), the memorandum submitted by Select Portfolio Servicing, Inc., as servicer for U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-FF12 Mortgage Pass Through Certificates, Series 2006-FF12 ("Select") in support of its Motion Seeking to Terminate the Automatic Stay ("Select's Motion"), MERS unquestionably possesses authority to execute an assignment of mortgage (the "MERS Issue"), and that it has established its right to intervene as of right, or by permission.

> **POINT I.    MERS ADOPTS AND INCORPORATES HEREIN THE ARGUMENTS SET FORTH IN THE MOTION BY SELECT PORTFOLIO SERVICING, INC. FOR RELIEF FROM THE AUTOMATIC STAY**

As stated in Select's Motion, the New York Supreme Court entered a Judgment of Foreclosure and Sale in favor of U.S. Bank Trustee. The Judgment of Foreclosure and Sale in

BULIB01\816901\1

this matter is final and bars an inquiry into the validity of MERS' Assignment of Mortgage. This inquiry is barred as a jurisdictional matter, by virtue of the *Rooker-Feldman* doctrine, which precludes federal court review of challenges to state court foreclosure judgments, and as a matter of *res judicata*. Thus, the Debtor is judicially estopped from Challenging the Motion for Termination. This Court is likewise without jurisdiction to entertain a challenge to U.S. Bank Trustee's right to foreclose, as any review of this issue by the Bankruptcy Court would be an improper appellate review of a two-year-old state court judgment. *See, i.e., Dockery v. Cullen & Dykman*, 90 F. Supp. 2d 233 (E.D.N.Y. 2000).

### POINT II.    MERS SHOULD BE ALLOWED TO INTERVENE AS OF RIGHT, OR BY PERMISSION

The Court's determination of the MERS Issue directly affects the business model of MERS. Additionally, approximately 50% of all consumer mortgages in the United States are held in the name of MERS, as the mortgagee of record. The Court's determination of the MERS Issue will have significant impact on MERS as well as the mortgage industry in New York and the United States. MERS has a direct financial stake in the outcome of this contested matter, and any determination of the MERS Issue has a direct impact on MERS.

Federal Rule of Civil Procedure 24, applicable in contested matters pursuant to Bankruptcy Rules 7024 and 9014, provides in part as follows:

> **(a)    Intervention of Right**. On timely motion, the court must permit anyone to intervene who:
>
> > (1)    is given an unconditional right to intervene by a federal statute; or
> >
> > (2)    claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its

> interest, unless existing parties adequately represent that interest.
>
> **(b)     Permissive Intervention**.
>
> > (1)     *In General*.   On timely motion, the court may permit anyone to intervene who:
> >
> > > (A)     is given a conditional right to intervene by a federal statute; or
> > >
> > > (B)     has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Bankr. P. 7024; Fed. R. Civ. P. 24(a)-(b) ("Rule 24").

The elements for intervention as a matter of right under Rule 24 are well settled. They are: "(1) timeliness, (2) the existence of an interest relating to the property or transaction which is the subject of the action, (3) the possible impairment of that interest, and (4) inadequacy of representation by existing parties." *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006); *United States v. Pitney Bowes, Inc*., 25 F.3d 66, 70 (2d Cir. 1994); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (recognizing economic interest as protectable for purpose of intervention of right). The requirements are broadly interpreted in favor of intervention. *See United States Postal Service v. Brennan*, 579 F.2d 188, 193 (2d Cir. N.Y. 1978) ("The policy of liberalizing the right to intervene in federal actions is reflected in the change of language of Rule 24(a) in 1966."); *United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004); *Nikon Corp. v. ASM Lithography B.V.,* 222 F.R.D. 647, 649 (N.D. Cal. 2004) ("Federal Rule of Civil Procedure Rule 24 has long been liberally construed in favor of applicants for intervention").

As MERS respectfully restates and submits, it meets the requirements of intervention as of right. First, MERS' request is timely in that no decision has been rendered, and MERS is in a position to respond to the Court's current deadlines for briefing on the MERS Issue. Second, MERS has an interest in the transaction subject of this contested matter; indeed, it is MERS'

very business model and role in this case which is at issue. MERS' financial stake in the outcome is unmistakable. Third, MERS' interest could be impaired in this matter because any decision of this Court could impact MERS' business, not just in this case, but nationwide. Lastly, the existing parties do not adequately represent MERS on the MERS Issue because Select's interest is solely in obtaining relief from stay on one house, on one mortgage, and the Trustee in Bankruptcy has already indicated that there are no assets available for distribution. The resources devoted to the typical lift stay matter of this magnitude by a lender or servicer is not in proportion to the substantial risk to MERS and its business model posed by the outcome of the MERS Issue in the Court. The MERS Issue goes to the heart of MERS' organization, and its stake in the matter far exceeds the amount in controversy in this matter. Simply put, the stakes to MERS are in an order of magnitude greater than the stakes to Select. As such, it is not reasonable for MERS to rely solely on Select to defend its interests in this matter. MERS should be permitted to intervene "as of right."

MERS' involvement in the underlying facts is critical to understanding the parties' respective rights in the Real Property. The MERS Issue is a common question of law as to both MERS and Select. Given MERS' stake in the outcome, it should, alternatively, be permitted an opportunity to defend itself and its business model before this Court. MERS satisfies the elements of permissive intervention under Federal Rule of Bankruptcy 24, therefore MERS should be entitled to intervene in this contested matter.

### POINT III.  MERS POSSESSES THE RIGHT TO EXECUTE THE ASSIGNMENT OF MORTGAGE

MERS hereby adopts and incorporates herein the arguments set forth in the memorandum submitted to this Court by Select supporting MERS' standing to execute the assignment of the Mortgage at issue. As established in the Affirmation of William C. Hultman, dated December

10, 2010, MERS was an authorized agent who clearly possessed authority to execute an assignment of the mortgage at issue.

On June 9, 2006, Ferrel Agard ("Debtor") executed and delivered a Note to First Franklin, A Division of National City Bank of Indiana ("First Franklin") whereby Debtor promised to pay First Franklin the sum of $416,000 together with interest at the rate of 7.25% per annum pursuant to the terms of the Note. On June 9, 2006, to secure to First Franklin and its successors and assigns the repayment of the indebtedness evidenced by the Note, the Debtor executed a mortgage (the "Mortgage") whereby the Debtor granted a mortgage to MERS, as nominee for First Franklin, and its successors and assigns, on the property described as 866 Leonard Drive, Westbury, New York (the "Real Property") and also described on Exhibit A attached to the Hultman Aff., as Exhibit A to the Mortgage). The Mortgage was duly recorded in Book 30777 at Page 241 of the land records of the County Clerk of Nassau County, New York.

The essence of MERS' business is to hold legal title to beneficial interests under mortgages and deeds of trust in the land records. The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to accurately and efficiently track transfers of servicing rights and beneficial ownership.

As of the date of the Note and Mortgage, First Franklin was a MERS member, and pursuant to the MERS' Rules of Membership, Rule 2, Section 5, (Attached to the Hultman Aff. as Exhibit B), First Franklin appointed MERS to act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns. First Franklin remained a MERS member during the entire time that it was the holder of the Note. (Attached as Exhibit C to the Hultman Aff. is First Franklin's Membership Agreement).

The subject Mortgage provides that "MERS is the mortgagee under this Security Instrument" as "nominee for Lender and Lender's successors and assigns." *See* Hultman Aff. Exhibit A.

The Mortgage further states that:

"MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . . ."

*See* Hultman Aff. Exhibit A.

First Franklin subsequently assigned the Note to Aurora Bank FSB formerly known in MERS membership records as Lehman Brothers Bank ("Aurora"). As of the date the Note was assigned to Aurora, Aurora was a MERS member. Pursuant to the MERS' Rules of Membership, Aurora appointed MERS to act as its agent to hold the Mortgage as nominee of Aurora and its successors and assigns. Aurora remained a MERS member through its affiliation with Aurora Loan Services LLC during the entire time that it was the holder of the Note. (Attached to the Hultman Aff. as Exhibit D is Aurora Bank FSB Membership Agreement).

Aurora subsequently assigned the Note to U.S. Bank as Trustee ("U.S. Bank"). As of the date the Note was assigned to U.S. Bank, U.S. Bank was a MERS member. Pursuant to the MERS' Rules of Membership, U.S. Bank appointed MERS to act as its agent to hold the Mortgage as nominee of U.S. Bank and its successors and assigns. U.S. Bank remained a MERS member during the entire time that it was the holder of the Note. (Attached to the Hultman Aff. as Exhibit E is U.S. Bank's Membership Agreement). U.S. Bank, as entity in possession of and the holder of the note, under the MERS Membership Rules, chose to instruct MERS to assign the Mortgage to U.S. Bank prior to the institution of foreclosure proceedings by U.S. Bank. On February 1, 2008, MERS executed an Assignment of Mortgage whereby MERS assigned all of its interest in the Mortgage to U.S. Bank (Attached to the Hultman Aff. as Exhibit F is the Assignment).

The mortgage executed by the Debtor designates MERS as the mortgagee of record and as nominee for "Lender and Lender's successors and assigns." When MERS executes instruments as the nominee or agent for the lender, its successors and assigns, MERS is vested with explicit powers to act with respect to the Mortgage and the secured real property. Pursuant to the unequivocal terms of the Mortgage, Debtor expressly agreed without qualification that MERS had the right to foreclose upon the premises as well as exercise any and all rights as nominee for the Lender.

It is well settled law that in cases wherein "the plaintiff is the assignee of the mortgage and underlying note at the time the foreclosure action was commenced, the plaintiff has standing to maintain the action." *Countrywide Home Loans v. Gress*, 68 A.D.3d 709, 888 N.Y.S.2d 914 (2d Dep't 2009) (*quoting Federal Natl. Mtg. Assn. v. Youkelsone*, 303 A.D.2d 546, 546-547, 755 N.Y.S.2d 730 (2d Dep't 2003)); *see also Wells Fargo Bank v. Marchione*, 69 A.D.3d 204, 887 N.Y.S.2d 615 (2d Dep't 2009); *First National Trust Assn. v. Meisels*, 234 A.D.2d 414, 651 N.Y.S.2d 121 (2d Dep't 1996).

The MERS Mortgage, where MERS appears as Original Mortgagee ("MOM Mortgage"), expressly states the lender's delegation of authority to MERS, and the borrower's acknowledgement and acceptance of MERS as the disclosed agent of the lender, and its successors and assigns. The MERS MOM Mortgage plainly states that MERS holds legal title in its capacity "as nominee for the Lender and the Lender's successors and assigns." The Mortgage also grants MERS broad rights, again as nominee for lender and lender's successors and assigns, "to exercise any or all" of the interests granted by the borrower under the Mortgage, including but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender ..."

This is more than sufficient to create an agency relationship between MERS and lender and the lender's successors in interest. No particular words or conduct are necessary to create an agency relationship in New York. *Standard Builders Supplies v. Gush*, 206 A.D.2d 720 (3d Dep't 1994).

All that is required is a manifestation of the parties' assent that the agent will act on behalf of the principal and subject to his control. *Id.* An agency relation arises where one party is specifically authorized to act on behalf of another in dealings with third persons.

Courts have found this language in a mortgage instrument to grant MERS the authority to assign the mortgage. *U.S. Bank, N.A. v. Flynn*, 27 Misc.3d at 802, 897 N.Y.S.2d 855 (Suffolk Co. 2010) (finding that language in the mortgage instrument conferring broad authority to act in all ways that the original lender could act, including "releasing … the mortgage" was sufficient to confer authority to MERS as nominee to assign the mortgage); *Crum v. LaSalle Bank, N.A.*, 2009 Ala. Civ. App. LEXIS 491, * 7 (Ala. Civ. App. Sept. 18, 2009) (challenge to assignment by MERS as nominee of the owner of note and mortgage rejected where the language of the mortgage indenture conferred upon MERS, as nominee, broad authority to act on behalf of the lender, including being empowered "to take any action required of the lender").

In *U.S. Bank, N.A. v. Flynn*, the New York Supreme Court, Suffolk County held:

> where, as here, an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. **No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender of a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long-standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void**.

\* \* \*

> A foreclosure plaintiff thus has standing where its ownership of the note and mortgage derives from an assignment issued by a nominee named in the mortgage indenture, qualified as above, and such assignment is complete prior to the commencement of such action.

27 Misc.3d at 806. (Emphasis added).

## CONCLUSION

Debtor has not submitted any statutory or case authority for its baseless assertion that MERS lacks standing to assign the Mortgage. For the reasons set forth herein and in the Affirmation of William C. Hultman, together with the memorandum submitted by Select Portfolio Servicing, Inc., MERS respectfully requests that the Court (a) grant its motion to intervene, (b) make a determination that MERS possesses authority to execute the assignment of the Mortgage, and (c) grant Select Portfolio Servicing, Inc.'s Motion Seeking to Terminate the Automatic Stay.

**DATED**:       December 12, 2010

Respectfully submitted:

**HISCOCK & BARCLAY, LLP**

By:  /s/ Susan R. Katzoff
       Susan R. Katzoff, Esq.

One Park Place
300 South State Street
Syracuse, New York 13202
Telephone: (315) 425-2880
Facsimile: (315) 425-8597
E-mail:   skatzoff@hblaw.com

*Attorneys for Mortgage Electronic Registration Systems, Inc.*