UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:

**FERREL L. AGARD,**

*Debtor.*

Chapter 7

Case No. 10-77338-REG

## DECLARATION OF WILLIAM C. HULTMAN

I, William C. Hultman, declare under the penalty of perjury, as follows:

1.      I am the Treasurer for Mortgage Electronic Registration Systems, Inc. ("MERS"). I am also Senior Vice President of MERSCORP, Inc. ("MERSCORP"). MERS is a wholly owned subsidiary of MERSCORP. Except as to the matters stated upon information and belief, I have personal knowledge of the facts and circumstances of the matters stated herein.

2.      I am providing this declaration to supplement my affirmation dated December 10, 2010 that has been filed with the Court (Docket Number 24), to provide the Court with additional background and information about MERS and the MERS® System.

### MERS AND THE MERS® SYSTEM

3.      MERSCORP is the operating company that owns and operates the MERS® System. The MERS® System is a national electronic registry established to track beneficial ownership interests and servicing rights in mortgage loans. MERS serves as the common nominee or disclosed agent for approximately 3,000 mortgage lenders in the United States. *See* MERS October 2010 News Release attached hereto as Exhibit A.

4.      The mortgage industry has historically used agents *(e.g.* servicers) in mortgage related transactions and activities, even prior to the creation of MERS; the MERS® System

keeps track of such servicers and answers inquiries as to who currently services a given mortgage loan, providing critical information that was not available prior to the creation of MERS.

5.    Lenders and other parties that join the MERS ® System agree to comply with MERS Rules of Membership and Terms and Conditions, as part of the MERS' Governing Documents.    A copy of such rules are attached hereto as Exhibits B and C, respectively. Notably, in the MERS Terms and Conditions a MERS Member agrees, among other things, that:

> The Member, at its own expense,  shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.

6.    Therefore, MERS is the mortgagee of record.   It holds the legal title to the mortgage and acts as the agent or nominee for the MERS Member lender, or owner of the mortgage loan. Also, MERS can become the holder of the promissory note when the owner of the loan chooses to make MERS the holder of the note with the right to enforce, if the mortgage loan goes into default.

7.    MERS becomes the mortgagee with respect to such mortgage loans, as nominee for such lenders, in one of two ways: (i) the borrower and the lender name MERS as the mortgagee of record at the time the mortgage loan is originated (sometimes referred to by the acronym "MOM", standing for "MERS as Original Mortgagee"), or (ii) the lender causes a mortgage loan that was previously originated or acquired by such lender to be assigned of record to MERS, so that MERS becomes the mortgagee of record in the land records in which the mortgage was recorded. In either case, the security instrument constitutes a MERS Mortgage.

8.    The MERS Mortgage names MERS as mortgagee in the original security instrument.  It identifies the name and address of the mortgagor (the borrower), the lender, and MERS, as the mortgagee.  It provides a description of the secured real estate and refers to the note executed contemporaneously with the mortgage.  The MERS Mortgage also demonstrates a conveyance of an interest in the security real estate to the lender and to MERS as the mortgagee, in a nominee/agent capacity for the lender.  The mortgage is signed by the mortgagor (borrower).  More importantly, for purposes of this proceeding, the Debtor's Mortgage, that is, the MERS Mortgage identifies that MERS serves as the disclosed agent for the lender and the lender's successors and assigns and sets forth MERS rights relating to the security instrument.

9.    Once MERS becomes the mortgagee of record, MERS remains the mortgagee of record when beneficial ownership interests or servicing rights are sold from one MERS Member to another, and the transfer is tracked electronically on the MERS® System.  At all times during this process, the original mortgage or an assignment of the mortgage to MERS remains of record in the public land records where the security real estate is located, providing notice of MERS' disclosed role as the agent for the MERS Member lender and the lender's successors and assigns.

10.    First Franklin, a Division of National City Bank of Indiana ("First Franklin"), Aurora Bank FSB, formerly known in MERS membership records as Lehman Brothers Bank ("Aurora") and U.S. Bank, National Association ("US Bank"), were or are all MERS Members.  *See* MERS MIN (Mortgage Identification Number) Summary and Milestones Report attached hereto as Exhibit D, which refer to some of these entities.  As noted below, the language in the MERS Mortgage clearly states that MERS is acting as nominee for the originating lender identified in the MERS Mortgage and the lender's "successors and assigns."

11.    At any time, the homeowner can gain access to the information contained on the MERS® System to determine the current servicer of their mortgage loan. MERS provides a toll free number that appears on every recorded document naming MERS as the mortgagee. The homeowner can also get information on the current servicer of their mortgage loan from the MERS website, www.mersinc.org. When Congress acted last year to require that borrowers be informed when their note is sold and the identity of the new note owner, MERS established within a matter of weeks a new service called Investor ID. Of MERS' 3,000 members, 97% agreed to disclose the identity of the note owner through MERS® System. Borrowers now can also access the name of their note owner by using the information on the MERS® System.

12.    In addition, the MERS® System identifies each county in which MERS Instruments are recorded. If rights are transferred from a MERS Member, which has appointed MERS to act as the lender's agent, to a party who is not a MERS Member (which has not appointed MERS to act as their agent on the loan), an assignment of mortgage from MERS to the non-MERS member is recorded in the county or municipal land records where the secured property is located. To date, approximately 65 million mortgage loans have been registered on the MERS® System nationwide.

### THE MERS® SYSTEM PROVIDES SUBSTANTIAL BENEFITS TO LENDERS, TITLE COMPANIES, AND BORROWERS

13.    In 2010, there were approximately $11 trillion in residential mortgage loans outstanding in the United States. Over the life of a mortgage loan, servicing rights of a loan may be sold and resold many times. By serving as the agent for the MERS Member lender and by tracking transfers occurring in the mortgage markets, MERS provides tremendous benefits to, and has been accepted and is regularly used in the primary and secondary mortgage market.

14.    The MERS® System benefits both lenders and consumers.  Lenders are benefited because transfers among MERS Members can be reflected instantaneously on the MERS® System, electronically on the date on which they occur.  Consumers are benefited because originating lenders typically pass the costs of assignments onto the borrowers to the extent they know in advance that the loan will be sold immediately subsequent to the closing.  Through the use of the MERS® System, these costs are eliminated.  On over 65 million mortgages in which MERS has been retained as the agent for the MERS Member lender in the aggregate these cost savings to consumers are substantial.  The MERS® System further benefits consumers by speeding up the flow of funds, and enabling the consumer to easily and instantly determine which lending institution owns or services his or her mortgage loan by calling a toll free number which is available 24 hours a day—seven days a week.  When using MERS, the lender may seek reimbursement from the consumer, as borrower, of a nominal disclosed fee of $6.95, as the lender's transaction cost to enroll the borrower's mortgage loan in the MERS® System.  By contrast, if the MERS Mortgage is not used, the borrower will pay approximately $55.00 or more to record an assignment of a traditional mortgage from one lender to another lender, as well as additional document preparation fees to prepare such assignment(s).

15.    The title industry recognizes the authority of MERS to act as the agent for the lender, and the lender's successors and assigns.  The primary benefit of MERS to the title industry relates to the loan payoff and lien release process.  The title industry has confidence that when MERS is the mortgagee, the chain of title is clear without the worry of unrecorded, incorrect, or intervening assignments.  In addition, the title industry recognizes real property instruments executed by MERS in its agency capacity for the MERS Member Lenders.

16.    It is also important to a title company and to consumers to be able to expeditiously find the name of the current servicing agent of a mortgage loan to ascertain the amount of the loan payoff.  This can sometimes be a time-consuming and frustrating task because the land records throughout New York State do not reflect the name of the servicer but rather the entity that initially held the mortgage lien that may or may not be the current lien holder or current loan servicer.  Without MERS, even after checking the land records, a title company will typically ask the borrower to provide additional information, such as monthly payment coupons to confirm the identity of the servicing agent.  The title industry and consumers greatly benefit from MERS because knowing that MERS has been contractually retained to act as the lender's agent by serving as the mortgagee in the land records provides them with an efficient and reliable method of obtaining the name of the current servicer.  This allows the payoff process to be faster, which results in a faster and reliable lien release process.

17.    The MERS Mortgage permits anyone who examines it in the public records to contact MERS via a toll-free telephone number to identify the current servicer of the given mortgage loan.  Again, the identity of such servicer has not been shown in the public records in the past, nor is there any legal requirement to file, or record the identity of mortgage loan servicers in public recorders' offices.  This information, however, in light of multiple transfers of notes and mortgages in the secondary mortgage market, is critical to the efficient and reliable operation of such market.  It enables consumers, mortgage lenders, servicers and title insurers to arrange, among other things, for consolidations, modifications, assignments, releases or discharges of such mortgage liens in a timely and reliable manner.  When such arrangements have been completed, then MERS also serves as the mortgagee of record, to execute and deliver

such consolidations, modifications, assignments, releases or discharges or similar documents, as

the nominee for the lender.

## MERS HAS AUTHORITY TO ASSIGN MORTGAGE INSTRUMENTS

18.     A reading of each MERS Mortgage shows that all of the borrowers have

expressly conveyed a security interest in the real estate that serves as collateral for the loan to

MERS as the nominee for the designated lender and the lender's successors and assigns.

19.     In this matter, the MERS Mortgage clearly discloses that MERS serves as the

mortgagee and as nominee for the Lender, its successors and assigns.

20.     The MERS Mortgage clearly demonstrates the Lender's delegation of authority

to MERS, and Debtor's acknowledgement and acceptance of MERS as the disclosed agent of the

Lender, and its successors and assigns.

21.     The MERS Mortgage expressly authorizes MERS to assign the Debtor's

Mortgage in accordance with the terms of the Debtor's Mortgage and security instrument on

record in the County Recorder's Office.  The language contained in Debtor's Mortgage states, in

pertinent part :

> "MERS" Mortgage Electronic Registration Systems, Inc.
> **MERS** is a separate corporation that is acting solely as a nominee
> for Lender and Lender's successors and assigns ...
> **FOR PURPOSES OF RECORDING, MERS IS THE
> MORTGAGEE OF RECORD.**
>
> [Bold in the original]
>
> * * * * *
>
> I [Borrower] understand and agree that MERS holds only legal title
> to the rights granted by me [Borrower] in this Security Instrument,
> but, if necessary to comply with law or custom, *MERS (as nominee
> for Lender and Lender's successors and assigns) has the right:*

> (A) to exercise any or all of those rights, including, but not limited
> to, the right to foreclose and sell the Property; and
> (B) to take any action required of Lender, including but not limited
> to releasing and canceling this Security Instrument.

(Emphasis added).

22.     I have reviewed MERS' records regarding Debtor's loan. Upon information and belief, a true and correct copy of Debtor's Mortgage is attached as Exhibit A to my affirmation dated December 10, 2010.

23.     As stated in the Debtor's Mortgage, MERS is identified as a separate corporation acting as nominee for the Lender, and Lender's successors and assigns, and MERS is the mortgagee of record therein.

24.     On February 1, 2008, prior to commencing the mortgage foreclosure proceeding involving the Debtor and Debtor's property, upon the direction of US Bank, a member of MERS, MERS executed an Assignment of Mortgage whereby MERS assigned all of its rights and interest in the Debtor's Mortgage to US Bank, as Trustee. According to MERS' records, US Bank, as Trustee, was the entity in possession of and the holder of the promissory note executed by the Debtor and therefore, upon delivery of such assignment US Bank, as Trustee held all of the rights, title and interest in such note and mortgage. The Milestones Report attached hereto as Exhibit D, is not representative of assignments of the mortgages. Rather, as stated above, MERS electronically tracks transfers of beneficial ownership interests in the promissory note and/or loan servicing rights. Beneficial interests in mortgage loans and/or servicing rights to such loans are not "assigned" by MERS. The MERS® System is not a vehicle used to create or transfer beneficial interests in mortgage loans.

**NOMINEES ARE COMMON IN REAL ESTATE TRANSACTIONS**

25.    MERS' status as a "nominee" is a common occurrence in public land records. Based on my experience, mortgagors, grantors, grantees, lenders and other parties in real estate and loan transactions frequently confer rights to a "nominee," "agent," "fiduciary," or "trustee" to enable that individual to act on their behalf.

26.    MERS regularly participates in a variety of transactions in furtherance of its delegation of authority as nominee or agent of the lender, including but not limited to execution and delivery of mortgage assignments, consolidation, modification and extension agreements, releases or discharges of assignments and acts as the mortgagee in foreclosure proceedings.

27.    MERS operates the MERS® System in all fifty states and the District of Columbia. MERS Mortgages, assignments and other MERS instruments and foreclosures are regularly accepted by over 3,000 county clerks and county recorders throughout the United States, including all county clerks and the New York City Register in New York State.

28.    MERS, and the other parties to these instruments, fully intend that such instruments will not merely be accepted for recording but also enforced in accordance with their terms. Therefore, I respectfully request that this Court recognize MERS as the lawful nominee and agent of the lender, and give full effect and validity to MERS actions, including MERS' assignment of the Debtor's Mortgage at issue in this proceeding.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct on December 22, 2010 at Reston, Virginia.

William C. Hultman

**EXHIBIT A**



# MERS – Quick Facts

- The security instrument (mortgage or deed of trust) for every mortgage loan in the MERS database is recorded in the appropriate county land registry.

- Every MERS mortgage loan agreement contains a paragraph that explicitly designates MERS as the mortgagee and gives MERS the right to foreclose.

- At settlement, borrowers agree to make MERS the mortgagee as nominee for all parties.

## WHAT IS MERS?

- MERS is an industry database utility that was created and is owned by the mortgage finance industry to improve the quality and availability of information in the mortgage finance process.

- MERS was established in 1995 by leaders in the mortgage industry, including the Mortgage Bankers Association, Fannie Mae, Freddie Mac, Bank of America, Nationwide, HSBC, American Land Title Association, and Wells Fargo, among others.

- All data in the MERS® System is provided by its members – mortgage lending and servicing institutions – and MERS does not alter that data.

- The MERS® System is a database that tracks the changes in servicing companies and the changes in the investor of mortgage loans.  It is owned by MERSCORP, Inc.

- The MERS® System links and tracks essential information regarding mortgage loans with a unique data identifier, the Mortgage Identification Number (MIN).  The MIN also appears on the mortgages recorded in the county land registry

- Over 3000 MERS members have registered more than 65 million loans on the MERS® System since it began operation in 1997.

- The MERS® System does not replace county land records – mortgages and deeds of trust are still recorded when MERS is the mortgagee.  The data in the MERS® System tracks and complements the data in the land records.

- The MERS® System does not alter or remove any information from county land records.

- The MERS® System provides a transparent means of tracking mortgage data and makes its data available to consumers free of charge.

- MERS did not "cause" mortgage securitization.  Mortgage securitization was taking place for many years before MERS was created.

- The MERS® System supports the mortgage securitization process by giving banks, brokers, loan originators, servicers, investors, regulators, and borrowers the ability to identify and track key information on every mortgage loan  registered on the MERS® System.

- At the discretion of a member institution, Mortgage Electronic Registration Systems, Inc. (MERS) can serve as a nominee (agent) for the owner of the mortgage loan (the lender or subsequent investor) and in that role become the mortgagee of record for a mortgage loan.  Mortgage Electronic Registration Systems, Inc. is a wholly owned subsidiary of MERSCORP, Inc.

- Allowing MERS to serve as the mortgagee reduces errors in the public land records caused by frequent and repeated assignments of mortgages (typically between servicing companies) during the sale of servicing rights, and thereby protects the integrity of the chain of title.

- With MERS as the mortgagee, the county land records always contain a notice of a lien on the property and the identity of the party to consult (MERS) to obtain additional information regarding the debt.



## MERS AND FORECLOSURES

- Mortgage Electronic Registration Systems, Inc.'s standing in foreclosure cases has been consistently upheld when the proper evidence has been placed before the court.

- MERS only brings a foreclosure action when it is instructed to do so by the owner of the mortgage loan.

- MERS abides by all federal, state and local laws and regulations, and those practices have been recognized as appropriate and binding by the courts.

- MERS certifying officers are expected to abide by MERS protocols, the practices of their individual lending institutions and all applicable laws.

- MERS' standing in foreclosures has been challenged in court and may be challenged in the future. When the proper evidence is presented and MERS' interests are accurately explained, MERS' standing has been ultimately upheld, and MERS anticipates its standing will be upheld in future challenges.

## MERS AND LITIGATION

- As the agent for the promissory note owner, upon instructions from the owner, MERS will commence the foreclosure process.

- The mortgage instrument states that MERS has the right to foreclose and sell the property. MERS does not authorize anyone to represent it in a foreclosure unless both the mortgage, and if required, the note, are in MERS' possession.

- MERS can become the holder of the promissory note when the owner of the loan chooses to make MERS the holder of the note, with the right to enforce if the mortgage loan goes into default.

- Assertions that somehow MERS creates a defect in the mortgage or deed of trust are not supported by the facts or precedents.

- Some important recent cases upholding MERS' rights include:

  o **IN RE Mortgage Electronic Registration Systems (MERS) Litigation**, a multi-district litigation case in federal court in Arizona where the court issued a favorable opinion, stating that "The MERS System is not fraudulent, and MERS has not committed any fraud."

  o **In re Tucker** (9/20/2010), where a Missouri bankruptcy judge found that the language of the deed of trust clearly authorizes MERS to act on behalf of the lender in serving as the legal title holder.

  o **Mortgage Electronic Registration Systems, Inc. v. Bellistri**, 2010 WL 2720802 (E.D. Mo. 2010), where the court held that Bellistri's failure to provide notice to MERS violated MERS' constitutional due process rights.

  o **Taylor v. Deutsche Bank Nat'l Trust Co.**, __ So. 3d __, 2010 WL 3056612 (Fla. 5th DCA 2010), where the court held the MERS mortgage to be valid under Florida law, and held that MERS may assign its rights in the mortgage to the foreclosing entity who holds the note. The Florida court also held that where MERS is described as the "mortgagee under the Security Instrument" the document grants to MERS legal status under the UCC, which MERS can assign to the foreclosing bank.

  o **Deutsche Bank Natl. Trust Co. v. Traxler**, 2010-Ohio-3940, where the Ohio Court of Appeals recognizes MERS' authority to assign a mortgage when designated as both a nominee and mortgagee.

  o **King v. American Mortgage Network, et al.**, United States District Court, District of Utah, Northern Division (Case No. 1:09-CV-125 TS), where the court, interpreting the language of the deed of trust, held that MERS had the authority to initiate foreclosure proceedings, appoint a trustee, and to foreclose and sell the property.

*MERS is happy to provide additional case cites upon request.*

**FOR IMMEDIATE RELEASE**
**Media Contact:**
Karmela Lejarde
(703) 761-1274



## Statement by R.K. Arnold, President and CEO of MERSCORP, Inc.

RESTON, Virginia (October 8, 2010)—MERSCORP, Inc. (MERS) President and Chief Executive Officer R.K. Arnold today issued the following statement regarding the organization and clarifying certain aspects of its operations:

"MERS is one important component of the complex infrastructure of America's housing finance system. Billions of dollars of mortgage money flow through the financial system every year. It takes many, often-unseen mechanical processes to properly get those funds into the hands of qualified homebuyers.

Technology designed to reduce paperwork has a very positive effect on families and communities. They may not see it, but these things save money and time, creating reliability and stability in the system. That's important to keep the mortgage funds flowing to the consumers who need it.

With millions of Americans facing foreclosure, every element of the housing finance system is under tremendous strain. What we're seeing now is that the foreclosure process itself was not designed to withstand the extraordinary volume of foreclosures that the mortgage industry and local governments must now handle.

MERS helps the mortgage finance process work better. The MERS process of tracking mortgages and holding title provides clarity, transparency and efficiency to the housing finance system. We are committed to continually ensuring that everyone who has responsibilities in the mortgage and foreclosure process follows local and state laws, as well as our own training and rules."

### Facts About MERS

*(NOTE TO EDITORS: The following is attributed to MERS Communications Manager Karmela Lejarde)*

**FACT: Courts have ruled in favor of MERS in many lawsuits, upholding MERS legal interest as the mortgagee and the right to foreclose. This legal right springs from two important facts:**

1. MERS holds legal title to a mortgage as an agent for the owner of the loan
2. MERS can become the holder of the promissory note when the owner of the loan chooses to make MERS the holder of the note with the right to enforce if the mortgage loan goes into default.

MERS does not authorize anyone to represent it in a foreclosure unless both the mortgage and the note are in MERS possession. In some cases where courts have found against MERS, those cases have hinged on other procedural defects or improper presentation of MERS's legal interests and rights. Citations can be found at the end of this document.*

**FACT: MERS does not create a defect in the mortgage or deed of trust.**

Claims that MERS disrupts or creates a defect in the mortgage or deed of trust are not supported by fact or legal precedents. This is often used as a tactic by lawyers to delay or prevent the foreclosure. The mortgage lien is granted to MERS by the borrower and the seller and that is what makes MERS the mortgagee. The role of mortgagee is legal and binding and confers to MERS certain legal rights and responsibilities.

**FACT: The trail of ownership does not change because of MERS.**

MERS does not remove, omit, or otherwise fail to report land ownership information from public records. Parties are put on notice that MERS is the mortgagee and notifications by third parties can be sent to MERS. Mortgages and deeds of trust still get recorded in the land records.

The MERS® System tracks the changes in servicing rights and beneficial ownership. No legal interests are transferred on the MERS System, including servicing and ownership. In fact, MERS is the only publicly available comprehensive source for note ownership.

While this information is tracked through the MERS® System, the paperwork still exists to prove actual legal transfers still occurred. No mortgage ownership documents have disappeared because loans were registered on the MERS® System. These documents exist now as they have before MERS was created. The only pieces of paper that have been eliminated are assignments between servicing companies because such assignments become unnecessary when MERS holds the mortgage lien for the owner of the note.

**FACT: MERS did not cause mortgage securitization.**

MERS was created as a means to keep better track of the mortgage servicing and beneficial rights as loans were getting bought and sold at a high rate during the late 1990s.

At the height of the housing market, low interest rates prompted some homeowners to refinance once, twice, even three times in the space of months. Banks were originating loans at more than double their usual rate. Assignments—the document that names the holder of the legal title to the lien—primarily between servicing companies, were piling up in county land record offices, awaiting recording. Many times the loans were getting refinanced before the assignments could get recorded on the old loan. The delay prevented lien releases from getting recorded in a timely manner, leaving clouds on title.

MERS was created to provide clarity, transparency and efficiency by tracking the changes in servicing rights and beneficial ownership interests. It was not created to enable faster securitization. MERS is the only publicly available source of comprehensive information for the servicing and ownership of the more than 64 million loans registered on the system. The Mortgage Identification Number (MIN), created by MERS, is similar in function to a motor vehicle VIN, which keeps track of these loans. Without MERS the current mortgage crisis would be even worse.

**FACT: Lenders cannot "hide" behind MERS.**

MERS is the only comprehensive, publicly available source of the servicing and ownership of more than 64 million loans in the United States. If a homeowner needs to identify the servicer or investor of their loan, and it is registered in MERS, they can be helped through <u>MERS® ServicerID</u> or via toll-free number at 888-679-6377.

**FACT: MERS fully complies with recording statutes.**

The purpose of recording laws is to show that a lien exists, which protects the mortgagee and any bona fide purchasers. When MERS is the mortgagee, the mortgage or deed of trust is recorded, and all recording fees are paid.

***NOTABLE LEGAL VICTORIES:***

a. <u>IN RE Mortgage Electronic Registration Systems (MERS) Litigation</u>, a multi-district litigation case in federal court in Arizona who issued a favorable opinion, stating that "The MERS System is not fraudulent, and MERS has not committed any fraud."

b. <u>IN RE Tucker</u> (9/20/2010) where a Missouri bankruptcy judge found that the language of the deed of trust clearly authorizes MERS to act on behalf of the lender in serving as the legal title holder.

c. <u>Mortgage Electronic Registration Systems, Inc. v. Bellistri</u>, 2010 WL 2720802 (E.D. Mo. 2010), where the court held that Bellistri's failure to provide notice to MERS violated MERS' constitutional due process rights.

## About MERS

MERS was created by the real estate finance industry to streamline the mortgage process by using electronic commerce to eliminate paper. The company operates a database that tracks loans as they move through the mortgage banking system. With over 3,000 members, MERS is the real estate finance industry's utility. To learn more about MERS, visit http://www.mersinc.org.

### #



# MERS IN THE FORECLOSURE PROCESS

For most cases, a party seeking to bring a foreclosure action must be in possession of both the note as the note-holder (which establishes the debt and the right to seek enforcement) and must also hold the mortgage lien as the Mortgagee (which confers the legal right to seize the property to satisfy the debt). For loans where Mortgage Electronic Registration Systems, Inc. (MERS) is the Mortgagee, foreclosures can be legally commenced in one of two ways.

**Non-MERS Foreclosure:**

A. The Note Owner notifies MERS that there is a default on the note and instructs MERS, as the Note Owner's agent and the Mortgagee, to assign the mortgage lien to whatever entity the Note Owner chooses to be the foreclosing agent (typically the Servicer for the mortgage loan).

B. MERS assigns the mortgage lien to the Servicer and MERS requires through its membership rules that the assignment be recorded, thereby making the Servicer the new Mortgagee of Record. The assignment is usually performed by a MERS "Certifying Officer," who is an employee of either the Note Owner or Servicer who has the limited authority to execute certain transactions (such as an assignment) at the direction of MERS.

C. The assignment of the mortgage is recorded in the County Land Records.

D. At this point, MERS no longer has an interest in the mortgage. The Note Owner should also endorse the note over to the Servicer if the jurisdiction requires the possession of the note (which is usually required in judicial foreclosure states). This may be done by means of a blank endorsement, which essentially renders the Note bearer paper (an instrument that is enforceable by any *bona fide* holder, such as the Servicer in this case).

E. Now in possession of both the Note and Mortgage, the Servicer can begin the foreclosure action.

**MERS Foreclosure:**

A. The Note Owner notifies MERS that the there is a default on the note and instructs MERS, as the Note Owner's agent and the Mortgagee, to begin the foreclosure process on the Note Owner's behalf.

B. The Note Owner endorses the Note over to MERS and grants possession to a MERS certifying officer effectively making MERS the Note Holder if the jurisdiction requires possession of the note (which is usually required in judicial states). This may be done by means of a blank endorsement, which essentially renders the Note bearer paper (an instrument that is enforceable by any *bona fide* holder, such as MERS).

C. MERS is already the Mortgagee in the County Land Records.

D. Now in possession of the Note, if required to be so, and as the Mortgagee, MERS is able to legally begin the foreclosure process on behalf of the Note Owner. This action is managed by a MERS "Certifying Officer," who is an employee of either the Note Owner or Servicer who has the limited authority to execute certain transactions (such as an assignment) at the direction of MERS.

# MERS®

## MERS During the Life of the Loan

During the life of the loan, Mortgage Electronic Registration Systems, Inc. is the mortgagee as the agent of the original lender and all subsequent holders of the note. The MERS® System tracks the changes in the Note ownership. Changes in servicing rights are also tracked. The County Land Records always contain a recording of the mortgage lien naming Mortgage Electronic Registration Systems, Inc. as the mortgagee.

Borrower/Homebuyer

Loan Agreement (closing)

Loan Payments

Note

Lender (Original Note Holder)

Servicer (agent)

Servicer (agent)

Note Sale

Aggregator (Note Holder 2)

Note Sale

Aggregator (Note Holder 3)

Note Sale

MBS Trust (Note Holder 4)

REGISTER ON MERS

UPDATE ON MERS

UPDATE ON MERS

UPDATE ON MERS

MERS® System Database

Mortgage recorded in County Land Records in the name of Mortgage Electronic Registration Systems, Inc. as mortgagee (agent) for original note holder and future note holders.

MORTGAGE

**County Land Records**
Mortgage Electronic Registration Systems, Inc. remains mortgagee of record on behalf of all note holders
County land records remain accurate

MERS Life of Loan Graphic v1 2010_10_14

# AMERICAN BANKER.

## THE FINANCIAL SERVICES DAILY

*Tuesday, October 19, 2010*

**VIEWPOINT**

# Title Transfer Law 101

BY KAREN GELERNT



Recently, commentators have raised questions about whether certain transfers of residential mortgage loans (made in connection with secondary market transactions such as securitizations) were sufficient to transfer title to the new owner of the mortgage loans and whether such transfers of rights were sufficient to allow the new owner of the mortgages to commence foreclosure, where appropriate.

To better understand these issues, they must be put in their proper perspective based upon the law that underlies transfers of mortgage loans. The underlying tenet, however, is that residential mortgage notes are negotiable instruments which, by their nature, are intended to be liquid and easily transferable by certain key actions outlined in the law. Challenging this notion, irresponsibly questions a well-established body of law affecting trillions of dollars of mortgage loans as well as trillions of dollars of other types of negotiable instruments.

A mortgage loan consists of two important documents: the mortgage note, which constitutes the obligation of the mortgagor

to pay its loan; and the mortgage, that constitutes the lien on the real property that secures the note. The note is a promissory note and notes secured by homes are typically negotiable instruments under law. Negotiable instruments have certain special characteristics under law. First, they are easily transferable (typically by endorsement).

Second, a holder in due course of a negotiable instrument takes the instrument free of most defenses to payment, thereby permitting the holder prompt payment. The intent behind the law of negotiable instruments was to enable such instruments to be as liquid as possible, to encourage commerce and lending. As such, residential mortgage loans are intended to be relatively liquid assets, easily transferred and easily realized upon.

In this way, a residential mortgage note is analogous to a check. In the case of the mortgage note, it is payable to the order of a mortgagee. Similar to a check, which is transferred by endorsement, a mortgage note is also transferred by endorse-

ment. An endorsement can be specific (such as "Pay to the order of Joe Smith") or can be blank (such as "Pay to the order of _____"). When a note is endorsed in blank, it becomes bearer paper (in other words, the bearer, or holder, is presumed to be the owner). The analogy would be a check made out to "cash." In both instances, the instrument can be physically transferred multiple times without the requirement of additional endorsements. If you presented a bank with a check made out to "cash" the bank should not question your ownership. Similarly, the ownership by an entity of a mortgage note endorsed in blank should not, in the ordinary course, be challenged.

In other words (and aside from the separate issue of whether the circumstances that are required to commence foreclose exist with respect to the mortgage loan), mere possession of a promissory note endorsed in blank (whether a check or a mortgage note) should provide the presumption of ownership of that promissory note by the current holder. So for example, a trustee for a securitization that has physical possession of the mortgage note, should be the presumed owner of that note. Any other outcome would put at risk the entire premise and foundation of negotiable instruments law.

In the end, an endorsement in blank does not, and should not, raise a question of ownership of the instrument.

The second component of a mortgage loan is the mortgage. The mortgage and the transfer of mortgage is governed by real property law. The mortgage must be recorded to put third parties on notice of the lienholder. This protects the mortgagee as well as other parties that might assert an interest in the property, like other lenders, judgment creditors or potential purchasers of the property. It protects the mortgagee because, if a third party were to assert an interest in the real property it would be required to give notice to all the interested parties of record, including the mortgagee of record under the mortgage. If an assignee did not record an assignment of mortgage, then the assignee would not be put on notice. However, this would be a risk borne by the assignee.

Historically, when a mortgage loan was transferred it was accompanied by an assignment of mortgage, oftentimes in blank. Because the secondary market was so active, buyers of mortgage loans frequently did not record the assignments in blank and merely delivered the assignments with the related mortgage notes endorsed in blank to the subsequent buyer. Frequently, the servicer of the mortgage loans remained the mortgagee of record and would receive any important notices regarding the related mortgaged properties. However, in order to facilitate easy transfers of mortgage loans, and to ease the burden of multiple recordations of assignments of mortgage in an active secondary market, MERS systems was developed. MERS is basically an agent for the mortgagee of record. So while a mortgage note may be transferred several times the mortgagee of record remains MERS and MERS tracks the intended mortgagee in its systems.

But at the end of the day, it is the owner of the mortgage note that dictates ownership of the mortgage (a premise commonly referred to as "the mortgage follows the note") as evidenced by Article 3 and Article 9 of the Uniform Commercial Code, in effect in all states.

Ideally, at foreclosure, the mortgagee of record should correspond to the holder of the note. However, any disparity should not be an acceptable basis to bar foreclosure, since the mortgage should not be the document that is dispositive of title to the mortgage loan. The holder of the note should be deemed the owner of the mortgage loan with standing and right to foreclose.

The chain of assignment of the mortgage may for various reasons be defective, or in the case of MERS, an agent for the holder may be identified as the mortgagee, but the principles of commercial law and negotiable instruments, if applied correctly, should ultimately prevail and allow the holder of the note to foreclose to the extent permitted by the mortgage loan documents and applicable state law. Any other outcome would call into question the foundations and liquidity of negotiable instruments and severely obstruct what was always intended as a relatively liquid market.

Karen Gelernt is a partner in the capital markets department at Cadwalader, Wickersham & Taft.

©2010 SourceMedia Inc. and American Banker. All rights reserved. SourceMedia, One State Street Plaza, New York, N.Y. 10004 (800) 367-3989

**EXHIBIT B**

MERSCORP, INC.
RULES OF MEMBERSHIP

TABLE OF CONTENTS

RULE 1     MEMBERSHIP                                    Page  2

RULE 2     REGISTRATION ON THE MERS® SYSTEM              Page 8

RULE 3     OBLIGATIONS OF MERS                           Page  15

RULE 4     RULE CHANGES                                  Page  18

RULE 5     FEES                                          Page  19

RULE 6     PROCEDURES                                    Page  22

RULE 7     DISCIPLINARY ACTIONS                          Page  23

RULE 8     FORECLOSURE                                   Page  25

RULE 9     USE AND OWNERSHIP OF INFORMATION              Page  28

RULE 10    INTERIM SECURITY INTERESTS                    Page  31

RULE 11    SERVICES                                      Page  32

RULE 12    WARRANTIES                                    Page  33

RULE 13    INDEMNIFICATION                               Page  37

RULE 14    NOTIFICATION TO MERS OF PENDING
           LAWSUITS                                      Page  39

# RULE 1

## MEMBERSHIP

*Section 1.*      MERSCORP, Inc. ("MERS") shall make the services of its mortgage electronic registration system (the "MERS® System") available to any Member of MERS.  A Member is defined as an organization or natural person who has signed a Membership Agreement and is not more than 60 days past due as to the payment of any fees due and owing to MERS.

*Section 2.*      Actions with respect to approval or disapproval of applications for membership shall be taken on behalf of MERS by such persons as may from time to time be designated by the Board of Directors of MERS.  Subject to Section 3 of this Rule, no applicant shall be approved unless it meets each of the standards of financial condition, operational capability and character defined below:

(a) If the applicant anticipates registering transactions on the MERS® System, the applicant has demonstrated to the satisfaction of MERS that it has adequate personnel capable of registering transactions on the MERS® System with necessary promptness and accuracy, that such personnel shall complete the computer-based training program designated by MERS, and that the applicant has internal security procedures in place to conform to any condition and requirement which MERS reasonably deems necessary for its protection and the protection of other Members:

(b) MERS has received no information which, in the sole discretion of MERS, would adversely reflect on the applicant, or any person associated with the applicant as defined in Section 3 below, to such extent that access of the applicant to the MERS® System should be denied, and any such applicant may be deemed not to meet the qualifications set forth in this paragraph only if:

(i) MERS shall have reasonable grounds to believe that the applicant, or any person associated with the applicant, has been or is responsible for (A) fraud, fraudulent acts or breach of fiduciary duty, (B) making a misstatement of a material fact or omitting to state a material fact to MERS in connection with its application to become a Member, or thereafter while a Member, or (C) the violation of such statutes, rules and regulations applicable to the applicant.

(ii) the applicant, or any person associated with the applicant, has been convicted prior to the filing of its application to become a Member, or at any time thereafter while a Member, of any crime, felony or misdemeanor which involves the purchase, sale or pledge of a mortgage loan or any interest therein or arose out of conduct of the business of funding, acquiring, lending on the security of, or servicing mortgage loans (or any business ancillary or related to any of the foregoing), or involves robbery, larceny, embezzlement, fraudulent conversion, forgery or misappropriation of funds or other property, or other dishonest acts; or

(iii) the applicant has been, or while a Member is, prohibited from transacting business with one or more of the following:     (A) Fannie Mae, (B) Freddie Mac, (C) Ginnie Mae, (D) the U.S. Department of Housing and Urban Development, or (E) the U.S. Department of Veterans Affairs; provided, however, that such prohibition shall not be the sole basis for denial of membership.

(c)  Eligible organizations and natural persons seeking to become Members shall make application on such form as MERS shall from time to time prescribe.  In connection with its application, an applicant shall submit its audited financial statements for its two most recent fiscal years.  MERS shall review the application to verify that the applicant satisfies all of the standards for membership, and in connection therewith the applicant shall make available to MERS such books and records and shall provide such other information as MERS shall reasonably request for such purpose.  Failure of an applicant to cooperate in providing requested books, records, and information shall be grounds for denial of the application for membership.

*Section 3.*     MERS may approve the application of any applicant, either unconditionally or on an appropriate temporary or other conditional basis, if MERS in its sole discretion determines that any standard specified in this Rule, as applied to such applicant, or any person associated with such applicant, is unduly or disproportionately severe or that the conduct of such applicant or person associated with such applicant has been such as not to make it against the interest of MERS, the existing Members, and the public to approve such application.  MERS shall notify each applicant of the action taken with respect to its application and the reasons therefore.  For purposes of this Rule, the term "person associated with" when applied to any person or entity shall mean (i) any partner, senior officer, director or controlling person of such

person or entity or (ii) any officer or employee of such person or entity who has, or shall have, access to the MERS® System.

*Section 4.*    Notwithstanding the foregoing, MERS may decline to accept the application of any applicant upon a determination by MERS that the MERS® System does not have adequate space, data processing capacity or other operational capability at that time to permit the inclusion of additional Members without impairing the ability of the MERS® System to provide services for existing Members; provided, however, that applicants whose applications are denied solely pursuant to this section shall be approved as promptly as the capabilities of the MERS® System permit, in the reasonable judgment of MERS, in the order in which their applications were filed with MERS or in such other order as may be determined by MERS from time to time in its reasonable judgment.

*Section 5.*    An applicant whose application to become a Member has been approved by MERS shall be considered a Member after signing and delivering to MERS a Member Agreement as approved by the Board of Directors of MERS and paying the initial MERS membership fee.

*Section 6.*    Each Member shall immediately notify MERS if at any time it fails to meet any of the membership criteria specified in this Rule.

*Section 7.* Any Member may withdraw its membership from MERS by giving 90 days written notice to the President or Secretary of the Corporation. Such withdrawal shall be effective

on the ninetieth day after receipt at which time all rights and obligations of the withdrawing Member shall cease, except any obligation of such Member to pay fees or assessments assessed prior to withdrawal to the extent such obligation has not been fulfilled and except for any conditions the Board of Directors may establish for the de-registration of mortgages from MERS, including fees to defray the costs of such deregistration.

(a) Any Member that sells, transfers, or otherwise disposes of all or substantially all of its assets to any entity that is not a member of MERS, shall be treated as having withdrawn from membership in MERS as of the effective time of such disposition of assets or combination with such entity unless the acquiring entity signs a Membership Agreement with MERS and as such shall be bound by the Rules of Membership and Procedures of MERS.

(b) If any Member that merges or otherwise combines with any other entity and such other entity is the surviving entity and is a non-Member of MERS, then the Member Agreement entered into by the Member shall remain in full force and effect as to the non-Member entity unless the surviving non-Member withdraws from membership or is removed in accordance with the Rules of Membership or Procedures.

(c)Members have an affirmative obligation to notify MERS in writing in the event of (i) any merger or combination with, or acquisition of, another member or (ii)  merger, combination or acquisition  by another entity.

(d) Members acknowledge and agree that the Member's Organization Identification Number (Org ID) and each Mortgage Identification Number (MIN) associated with that Org ID are the property of MERS and the use of such Org ID and MINs are subject to the terms and conditions of these Rules and the other Governing Documents for membership.

(e) If a Member sells the contractual rights to service a loan registered on the MERS® System to another Member, then the selling Member shall reflect such transfer on the MERS® System in accordance with MERS rules and procedures and a Seasoned Servicing Transfer Fee in the amount specified in the MERS Fee Schedule in effect at the time the transfer is effective shall be due to MERS for each loan transferred, provided that the transfer date is more than 270 days from the Note Date for that loan. If (i) a Member initiates a servicing transfer transaction on the MERS® System between two Org IDs issued to that Member or (ii) a Member initiates a servicing transfer transaction on the MERS® System to another Member who is affiliated with that Member, then such transfer transaction shall be subject to a Intracompany Transfer Fee for each loan transferred in the amount specified in the MERS Fee Schedule in effect at the time the transfer is effective, provided that the transfer date is more than 270 days from the Note Date for that loan and further provided that the affiliate relationship between the two Org Ids is shown on the MERS® System (i.e., referred to as a Parent/Child relationship in the MERS Procedures).

*Section 8.*    A Member may change its Membership Profile on the MERS® System at any time. Each Member shall designate one individual within its organization as its contact person for all of such Member's dealings with MERS. It is the Member's responsibility to update the MERS® System if the contact person changes.

## RULE 2

### REGISTRATION ON THE MERS® SYSTEM

*Section 1.*    MERS, in its sole discretion, shall determine the type and level of access to the MERS® System permitted to each Member and the types of transactions that such Member may register on the MERS® System.   No Member may register or attempt to register any transaction not authorized under the Rules of Membership or the Procedures.

*Section 2.*    Subject to Section 1 above, each Member may register any mortgage loan on the MERS® System in accordance with the Procedures.

*Section 3.*    Each Member shall promptly, or as soon as practicable, register on the MERS® System, in accordance with the Rules of Membership and the Procedures, any and all of the following transactions to which such Member is a party which involve a mortgage loan registered on the MERS® System until such time as the mortgage loan is deactivated from the MERS® System:

(a) the pledge of any mortgage loan or security interest therein and the corresponding release of such security interests;

(b) the pledge of any servicing rights or security interest therein and the corresponding release of such servicing rights or security interests;

(c) the transfer of beneficial ownership of a mortgage loan by a Member to a Member;

(d) the transfer of beneficial ownership of a mortgage loan by a non-Member to a Member;

(e) the transfer of beneficial ownership of a mortgage loan by a Member to a non-Member;

(f) the transfer of servicing rights with respect to a mortgage loan by a Member to a Member;

(g) the registration of servicing rights with respect to a mortgage loan from a non-Member to a Member;

(h) the transfer of servicing rights with respect to a mortgage loan from a Member to a non-Member (requiring deactivation);

(i) the initiation of foreclosure of any mortgage loan registered on the MERS® System;

(j) the release of a lien with respect to a mortgage loan registered on the MERS® System;

(k) the creation of a sub-servicing relationship with respect to a mortgage loan registered on the MERS® System; and

(l) any renewal, extension or modification of a mortgage loan registered on the MERS® System that involves the recording of a new security instrument and does not merely change the rate, principal balance or term.

*Section 4.*    (a)    The transfer to a non-Member of servicing rights with respect to a mortgage loan registered on the MERS® System shall require the deactivation of such mortgage loan from the MERS® System in accordance with these Rules and the Procedures.  Upon the withdrawal or removal of a Member, all mortgage loans for which such Member acts as servicer shall be deactivated from the MERS® System, provided, however, that the mortgage loans shall remain registered with MERS if the substitute servicer is a Member and all MERS fees relating to the servicing transfer to the substitute servicer are paid.  The transfer to a non-Member of a beneficial interest in a mortgage loan registered on the MERS® System shall not require the de-registration of such mortgage loan from the MERS® System unless:  (i) the servicer is a non-Member of MERS or (ii) such non-Member beneficial owner shall require deactivation.

(b)    As long as there are no contrary instructions, when the beneficial ownership of a mortgage loan registered on the MERS® System is vested in a non-Member, MERS and Mortgage Electronic Registration Systems, Inc. shall at all times comply with the instructions of the Member shown on the MERS® System as the servicer of such mortgage loan

with respect to transactions relating to such mortgage loan.  Such Member shall indemnify and

hold harmless MERS, and any employee, director, officer or affiliate of MERS, for any and all

liability incurred as a result of compliance by MERS with instructions given by such Member on

behalf of the non-Member beneficial owner.

   *Section 5.*    *(a)*    Each Member, at its own expense, shall cause Mortgage Electronic

Registration Systems, Inc., to appear in the appropriate public records as the mortgagee of record

with respect to each mortgage loan that the Member registers on the MERS® System.  Mortgage

Electronic Registration Systems, Inc. is a wholly owned subsidiary of MERS created for the

purpose of serving as the mortgagee of record in the appropriate public records.  The Member

shall monitor the public records to verify that it has complied with the preceding sentence and

shall maintain an adequate quality assurance program to ensure that its verification procedures

are effective.  The Member hereby warrants to MERS that either (i) an appropriate mortgage, or

deed of trust, or other such instrument as may be required under applicable state law, naming

Mortgage Electronic Registration Systems, Inc. as mortgagee, or (ii) an appropriate assignment

of mortgage, or assignment of deed of trust, or other such instrument as may be required under

applicable state law, naming Mortgage Electronic Registration Systems, Inc. as mortgagee, has

been or as soon as practicable shall be, properly prepared and delivered to the appropriate

recording office and the Member shall promptly register on the MERS® System the date on

which such instrument was delivered.  As soon as practicable, the Member shall register on the

MERS® System the specific recordation information provided by the custodian of public records

which evidences that Mortgage Electronic Registration Systems, Inc. is mortgagee of record with

respect to such mortgage loan.  Upon the Member's becoming aware of any discrepancy between

the information shown on the MERS® System and the information in the public records, the Member shall promptly correct the information on the MERS® System.

(b) At or prior to the time a Member registers a mortgage loan on the MERS® System, such Member shall provide evidence reasonably satisfactory to MERS demonstrating that Mortgage Electronic Registration Systems, Inc. is, or as soon as practicable shall be, properly recorded as mortgagee of record in the appropriate public records with respect to such mortgage loan.

(c) Mortgage Electronic Registration Systems, Inc. shall not act as mortgagee of record for the purpose of procuring borrowers for the Member or making mortgage loans on behalf of the Member.

(d) Reference herein to "mortgage(s)" shall include deed(s) of trust, and any other form of security instrument under applicable state law.  References herein to "mortgagee of record" shall include the named beneficiary under a deed of trust in those jurisdictions where deeds of trust are used to secure loans, and any similar status as used in connection with any other form of security instrument under applicable state law.

*Section 6.*     MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the beneficial owner, MERS and Mortgage Electronic Registration Systems, Inc. may rely on instructions from the servicer shown on the MERS® System in accordance with these Rules and the Procedures

with respect to transfers of beneficial ownership, transfers of servicing rights, and releases of security interests applicable to such mortgage loan. The beneficial owner shall give any such contrary instructions to MERS and Mortgage Electronic Registration Systems, Inc. in writing and they may rely on such instructions until receipt of further written instructions from the beneficial owner.

    *Section 7.*    Each Member shall review for accuracy and completeness all information shown on the MERS® System with respect to mortgage loans and related transactions registered by such Member, and promptly update any incorrect information.

    *Section 8.*    Within ten (10) business days of receiving notice from the Member servicing the loan that the mortgage loan has been paid in full, MERS shall give notice to all Members shown on the MERS® System as having interests in such mortgage loan. The Member servicing the mortgage loan shall be responsible, at its own expense, to:

    (a)    take, or cause to be taken, appropriate action, including delivery to the appropriate recording office of an instrument of satisfaction or release (which may be signed by a certifying officer of Mortgage Electronic Registration Systems, Inc.), to extinguish the lien of such mortgage in the proper manner within the applicable state imposed time frames, and register on the MERS® System the date of such action, or

    (b)    notify MERS that, in fact, the mortgage loan has not been paid in full. If MERS is notified that a lien release has not been executed in compliance with applicable state

imposed time frames, and the Member fails to take such action or give MERS notice that the mortgage loan has not been paid in full, then MERS reserves the right to release such mortgage. Such Member, upon demand, shall reimburse Mortgage Electronic Registration Systems, Inc. for its out-of-pocket costs in connection with release of the mortgage, including any penalties for failure to release the mortgage or take other action in a timely manner, and shall pay an administrative fee determined by Mortgage Electronic Registration Systems, Inc., and

(c)    indemnify MERS and Mortgage Electronic Registration Systems, Inc. with respect to any liability which may arise as a result of the failure of such Member to take such action or give MERS such notice in a timely and accurate manner.    Without limiting the generality of the foregoing, such indemnification shall extend to circumstances in which a mortgage is released by Mortgage Electronic Registration Systems, Inc., but the mortgage loan has not been paid in full, or in which such Member wrongfully refuses to authorize Mortgage Electronic Registration Systems, Inc. to release the mortgage.

## RULE 3

### OBLIGATIONS OF MERS

*Section 1.*    MERS shall within two (2) business days forward to the appropriate Member or Members, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified notices, payments, and other correspondence received by MERS with respect to mortgage loans registered on the MERS® System for which Mortgage Electronic Registration Systems, Inc. serves as mortgagee of record.

*Section 2.*    MERS shall provide to Members certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERS may determine from time to time.

*Section 3.*    (a)    Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating one or more officers of such Member, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan registered on the MERS® System to such Member, (ii) assign the lien of any mortgage naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage is registered on the MERS® System, is shown to be registered to the Member, (iii) to foreclose upon the property securing any mortgage loan registered on the MERS® System to such Member, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any bankruptcy

proceeding regarding a loan registered on the MERS® System that is shown to be registered to the Member, (v) to take such actions as may be necessary to fulfill such Member's servicing obligations to the beneficial owner of such mortgage loans (including mortgage loans that are removed from the MERS® System as a result of the transfer thereof to a non-Member), (vi) to take action and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS® System to such Member, (vii) endorse checks made payable to MERS to the Member that are received by the Member in payment on any mortgage loan registered on the MERS® System that is shown to be registered to the Member. In instances where Mortgage Electronic Registration Systems, Inc. designates an officer of a Member as a certifying officer of MERS for the limited purposes described above, such Member shall indemnify MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such certifying officer.

(b) Upon request by Mortgage Electronic Registration Systems, Inc. , the Member shall deliver to Mortgage Electronic Registration Systems, Inc. a corporate resolution naming the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. as a "certifying officer" of the Member solely for the purpose of installing Mortgage Electronic Registration Systems, Inc. as mortgagee of record on mortgage loans which have been registered on the MERS® System by the Member.

(c) At the request of the beneficial owner of a mortgage loan, or any designee thereof as shown on the MERS® System, Mortgage Electronic Registration Systems, Inc. shall provide to such beneficial owner or designee a recordable assignment for such mortgage loan to

another party designated by the beneficial owner or designee; provided, however, that such beneficial owner or designee shall warrant to Mortgage Electronic Registration Systems, Inc. that such assignment shall be promptly recorded. Requests for recordable assignments may be made only for purposes of deactivating a mortgage loan from the MERS® System. The deactivation of a mortgage loan for any reason shall be subject to the payment of all applicable fees and expenses, including, without limitation, the costs of preparing and recording the assignment. All such applicable fees and expenses shall be included in a fee schedule.

*Section 4.*    Unless otherwise specifically stated herein, any action required or permitted to be taken by MERS or Mortgage Electronic Registration Systems, Inc. pursuant to these Rules shall be taken on behalf of MERS by such persons as may from time to time be designated by the respective Boards of Directors of MERS and Mortgage Electronic Registration Systems, Inc.

## RULE 4

### RULE CHANGES

*Section 1.*    (a)  MERS shall notify in writing all Members of any proposed changes to the Rules of Membership, and shall provide a copy of such proposed changes to all Members no fewer than ninety (90) days prior to the proposed implementation date of such changes.


(b)  Members may submit to MERS for its consideration their comments with respect to any such proposal, and such comments shall be reviewed by MERS and filed with the records kept by MERS.  Notwithstanding the receipt of any such comments, the Board of Directors of MERS, in its sole discretion, shall have the right to amend, add to or repeal any Rule or part thereof after the expiration of such ninety (90) day comment period, so long as such amendment is not contrary to the Certificate of Incorporation of MERS.


(c)  Each Member shall be bound by any amendment to the Rules with respect to any transaction occurring subsequent to the time such amendment takes effect as fully as though such amendment were now a part of the Rules; provided, however, that no such amendment shall affect the Member's right to withdraw from MERS in accordance with the procedures set forth in these Rules before such amendment or change becomes effective.


(d)    MERS shall provide a ninety (90) day written notice for any changes to the MERS Membership Terms and Conditions.

# RULE 5

## FEES

*Section 1.*    (a)    Each Member shall pay such fees, charges and assessments to MERS for membership, registrations, transfers, and other transactions on the MERS® System and other services rendered by MERS as shall be determined from time to time by MERS in its sole discretion, and specified in a fees schedule promulgated by MERS which may change from time to time.

(b)    MERS shall provide all Members with at least thirty (30) days advance written notice of changes to the fees schedule with the effective date of the new fees.

(c)    Transaction fees for the transfer of servicing between MERS Members (including Intra-company Transfers) shall be payable by the transferor.  If the transferor fails to pay such transaction fees due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, MERS will invoice the transferee and the immediate payment of those transaction fees shall be the responsibility of the transferee.  Any monies received by MERS from the bankruptcy estate of the transferor shall be applied as a credit to the transferee's MERS account. MERS has invoked this provision because the transferee has received the benefit of the service provided by MERS and is in the best position to protect itself by holding back a portion of the purchase price when purchasing the corresponding loans.   The transferee will also be responsible for the cost if the servicing transfer transactions have not been initiated on the MERS® System, and the transferor cannot initiate the transactions themselves due to the circumstances listed in the preceding sentence and the transferee requests such transaction to be initiated by MERS.  If the transferee fails to pay any transaction fees by the invoice due date,

MERS may suspend the transferee's access to the MERS® System pending the payment in full by the transferee of such transaction fees.

(d)    If a Member registers a mortgage loan on the MERS® System pursuant to the Rules of Membership and Procedures, and that Member subsequently transfers the servicing rights to that mortgage loan to another Member without first paying the registration fee to MERS pursuant to Rule 5, Section 1(a), and the transferor fails to pay such transaction fees due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, MERS will invoice the transferee and  the immediate payment of those transaction fees shall be the responsibility of the transferee.   Any monies received by MERS from the bankruptcy estate of the transferor shall be applied as a credit to the transferee's MERS account. MERS has invoked this provision because the transferee has received the benefit of the service provided by MERS and is in the best position to protect itself by holding back a portion of the purchase price when purchasing the corresponding loans.  If the transferor has not registered the mortgage loan on the MERS® System and is unable to register the mortgage loan due to bankruptcy, or because the transferor is no longer in business or cannot otherwise be located or contacted, then the transferee must register the mortgage loan and pay the corresponding registration fee pursuant to Rule 5, Section 1(a).   If the transferee fails to pay any transaction fees by the invoice due date, MERS may suspend the transferee's access to the MERS® System pending the payment in full of such transaction fees.

*Section 2.*    MERS shall have the authority to charge a Member for any unusual expenses caused directly or indirectly by such Member, or incurred at its request, including, without limitation, the cost of producing records pursuant to a court order or other legal process

in any litigation or other legal proceeding to which such Member is a party or in which such records relating to such Member are so required to be produced, whether such production is required at the instance of such Member or of any other person, provided however, that MERS shall give the Member written notice of such Court Order or legal process in advance of producing the records to enable the Member to pursue its legal rights to refuse the request.

*Section 3.*    Each Member shall pay interest on any delinquent fee payments at the rate set from time to time by MERS. Said interest rate shall be specified in the fees schedule.

*Section 4.*    Whenever a Member receives notice of a foreclosure proceeding, service of process on a lawsuit naming MERS as a defendant, or a code violation notice, that is forwarded to the Member by MERS on a property where MERS holds a lien or held a lien for that Member, the Member has an affirmative duty to MERS to review the document and respond accordingly. This includes retaining counsel to defend MERS against any possibility of a monetary judgment against MERS. If the lawsuit or document involves a foreclosure action with MERS holding a lien on behalf of the Member, and the Member determines not to contest the foreclosure or answer the lawsuit, the Member should inform the foreclosing party to send subsequent documents in the lawsuit or foreclosure to MERS c/o of the Member's address.

If MERS determines that MERS receipt of mail involving a foreclosure proceeding, lawsuit or code violation resulted from a violation of any of the MERS Rules or Procedures, then MERS shall be entitled to charge the Member a fee of $12.00 for each filing or document in the proceeding or for each piece of mail received related to the code violation that MERS forwards to the Member beyond the initial service of process or notification that MERS received on behalf of that Member.

## RULE 6

### PROCEDURES

*Section 1.* (a)    MERS shall prescribe from time to time reasonable Procedures with respect to the business and operation of MERS and Mortgage Electronic Registration Systems, Inc. and the execution of transactions on the MERS® System.  Each Member shall be bound by such Procedures and any amendment thereto in the same manner as it is bound by the provisions of the By-Laws and these Rules.

(b) MERS shall give Members sixty (60) days notice prior to implementation of any amendment to the Procedures.

# RULE 7

## DISCIPLINARY ACTIONS

*Section 1.*    MERS, in its sole reasonable discretion may sanction a Member for one or more violations of these Rules or the Procedures or for errors, delays or other conduct detrimental to the operation of MERS or Mortgage Electronic Registration Systems, Inc., the MERS® System or other Members, including, without limitation, a Member's failure to provide adequate training and supervision to its employees to enable proper use of the MERS® System, by imposing any of the following:

(a) removal as a Member, but only if the notice requirements of Rule 7, Section 2 below have been met by MERS;

(b) suspension, for a period and upon terms determined by MERS;

(c) fines, in an amount determined by MERS;

(d) censure; or

(e) any other fitting requirements that may be determined by MERS.

*Section 2.*    MERS shall give written notice to the applicable Member of the terms of any such violation and possible sanction, which shall include a brief description of the basis for the imposition of the sanction.  The Member shall then have fifteen (15) days from the date of receipt of the notice to provide a written response and have an opportunity to be heard.  At the expiration of the fifteen (15) days, if MERS determines that a breach has occurred and that sanctions may be imposed, the Member shall be given thirty (30) days to cure the breach.  If the breach is not cured within the thirty (30) days, MERS may impose such sanctions on the

Member.  If the Member does not cure the breach during the thirty (30) day curing period, then upon the expiration of the curing period, MERS shall notify any other member of MERS for whom the breaching Member acts as an authorized servicer or sub-servicer of mortgage loans registered on the MERS® System.

Section 3.  If the nature of the breach is the same or similar to a breach by the Member that has occurred within the last year, there may not be a curing period.

## RULE 8

### FORECLOSURE

*Section 1.*    (a)    With respect to each mortgage loan for which Mortgage Electronic Registration Systems, Inc. is the mortgagee of record, the beneficial owner of such mortgage loan or its servicer shall determine whether foreclosure proceedings with respect to such mortgage loan shall be conducted in the name of Mortgage Electronic Registration Systems, Inc., the name of the servicer, or the name of a different party to be designated by the beneficial owner.

(b)    The Member servicing a mortgage loan registered on the MERS® System shall be responsible for processing foreclosures in accordance with the applicable agreements between such Member and the beneficial owner of such mortgage loan.

(c)    In the State of Florida, the authority to conduct foreclosures in the name of MERS granted to a Member's Certifying Officers under Paragraph Three of the Member's MERS Corporate Resolution is revoked.  Effective June 1, 2006, the Member shall be sanctioned $10,000.00 per violation for commencing a foreclosure in Florida in the name of MERS.

(d)    In the event that the beneficial owner or its designated servicer determines that foreclosure proceedings shall be conducted in the name of a party other than Mortgage Electronic Registration Systems, Inc., the servicer designated on the MERS® System shall cause to be made an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. to the person designated by the beneficial owner, and such beneficial owner shall pay all recording costs in connection therewith.

*Section 2*:    (a)    If a Member chooses to conduct foreclosures in the name of Mortgage Electronic Registration Systems, Inc., the note must be endorsed in blank and in possession of one of the Member's MERS certifying officers.  If the investor so allows, then MERS can be designated as the note-holder.

(i)    The Member shall not plead MERS as the note-owner in any foreclosure document; including but not limited to, the foreclosure complaint.

(ii)    The Member shall not plead MERS as a co-plaintiff in a foreclosure action.

(iii)  If the note is lost or cannot be located, the Member shall not commence a foreclosure action in the name of MERS, but rather must assign the mortgage out of MERS.

(b)  In non-judicial foreclosure states, if the Member chooses to foreclose in MERS name under the power of sale provision in the security instrument and is not seeking a deficiency judgment, then the note does not need to be in the possession of the Member's MERS Certifying Officer when commencing the foreclosure action; provided, however, that under no circumstances may the Member allege that the note is in their possession unless it so possesses.

(c)  If the Member pleads MERS as the note-owner or as a co-plaintiff or commences a foreclosure in the name of MERS when the note is lost or cannot be located, it shall be considered a violation of the MERS Membership Rules and MERS may dismiss such foreclosure action.    Effective June 1, 2006, the Member shall be sanctioned $1,000.00 for the first violation and $5,000.00 for each subsequent violation of this Rule.

(d)  For all foreclosures conducted in the name of MERS, the member shall take all reasonable and necessary steps to avoid having Mortgage Electronic Registration Systems, Inc. take title to the applicable property that is the subject of a mortgage loan. Mortgage Electronic Registration Systems, Inc. shall not be obligated to take title to any property that is the subject of a mortgage loan; provided, however, that if the Member so requests, Mortgage Electronic Registration Systems, Inc. may take title at the conclusion of the foreclosure sale upon prior written consent to the Member from Mortgage Electronic Registration Systems, Inc.  If title is taken in the name of Mortgage Electronic Registration Systems, Inc., the Member

shall take all necessary and reasonable steps to remove Mortgage Electronic Registration Systems, Inc. from title as soon as possible.

(e)  If title is put into Mortgage Electronic Registration Systems, Inc.'s name and there is a violation of state, county or city codes or any other applicable regulation; including, but not limited to, non-payment of tax bills, the Member shall be responsible to promptly take all necessary action to prevent fines or judgments from being entered against MERS.  If the Member fails to do so, MERS may take such action and will sanction the member for all costs and expenses; including, but not limited to, attorney fees.

# RULE 9

## USE AND OWNERSHIP OF INFORMATION

*Section 1*  (a) Each Member shall at all times keep confidential and shall not sell or otherwise disclose any information contained on the MERS® System that is (i) not owned by such Member, (ii) was not originally provided by Member to MERS, or (iii) not available in public records or otherwise known to the Member.  MERS and the Member shall use a reasonable degree of care consistent with the Standards for Safeguarding Customer Information (16 C.F.R. parts 314) (the "Safeguards Rule") to preserve the confidentiality of any such information, and to take all reasonable action by instruction, agreement or otherwise with its directors, officers, employees, affiliates and agents to satisfy its obligation with respect to confidentiality, non-disclosure and limitation of use of any such information.  The obligations of MERS and the Member under this Rule 9 shall survive termination of this agreement

(b) MERS shall have no ownership rights whatsoever in or to any information contained on the MERS® System.  Notwithstanding the foregoing, MERS is authorized to (i) use the information contained on the MERS® System to compile transaction volume reports to track current or previous usage levels, project future usage and provide the mortgage industry with usage data which may be used to gauge the success of the MERS® System, but excluding any references to a particular borrower name or address other than in reports given to the MERS Board of Directors, (ii) use the information contained on the MERS® System as part of its quality control process to monitor compliance with operational standards and time frames, (iii) furnish any information contained on the MERS® System to any governmental authority pursuant to a subpoena or court order, provided, however, that MERS

shall undertake, to the extent it reasonably can under the circumstances, to notify all Members

shown on the MERS® System as having an interest in a mortgage loan which is the subject of

such subpoena or court order to allow such Members time to attempt to quash such subpoena or

court order, or (iv) provide information and reports (as approved by the Board) regarding

mortgage activity and mortgage loans registered on the MERS® System that otherwise could

have been obtained through the public land records if not for the implementation of MERS.

(c) Any reports given to third parties shall not identify individual

Members or borrower names and addresses as to transaction information without the Member's

prior consent.

*Section 2.*    (a) MERS acknowledges and agrees that: (a) the Member will be entering

customer information into the MERS® System to which MERS has access as a part of the

services provided to the Member, and (b) such customer information is subject to Section 1 of

Rule 9 of the MERS Rules of Membership – "Use and Ownership of Information".

(b) MERS has implemented and will maintain an information security program

consisting of reasonable administrative, physical, and technical safeguards designed to meet the

Objectives set forth in 16 C.F.R. 314.3(b) of the Safeguards Rule.

MERS's controls and procedures designed to safeguard the confidentiality and

security of the information stored on the MERS® System are generally described in the MERS

Integration Handbook (Volumes I and II).    MERS believes the controls and procedures so

described meet the Objectives specified in the Safeguards Rule. MERS agrees to maintain controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System that are no less stringent than those described in the current version of the MERS Integration Handbook. MERS further agrees that any changes or modifications to such controls and procedures will also be designed to meet the Objectives specified in the Safeguards Rule. Each Member shall inform MERS in writing whenever the Member believes that the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System fail to meet the Objectives specified in the Safeguards Rule. MERS agrees the Member (or a mutually agreeable third party representative) will be given access to monitor that MERS has satisfied the provisions of this paragraph, including access to any audits, summaries of test results or other equivalent evaluations of the controls and procedures designed to safeguard the confidentiality and security of the information stored on the MERS® System. MERS will promptly report to the Member any actual or suspected breach of the confidentiality or security of any information contained on the MERS® System.

(c) As part of the controls and procedures described in paragraph (b) of this section, MERS maintains, and will continue to maintain, a Disaster Recovery Plan, a summary of which will be supplied to the Member upon request. MERS agrees that the Disaster Recovery Plan will be reviewed at least annually and will include annual testing to ensure that the MERS® System can be restored within 48 hours after the declaration of a disaster under the plan.

## RULE 10

### INTERIM SECURITY INTERESTS

*Section 1.*    The pledge of a security interest in any mortgage loan registered on the MERS® System to an interim funding lender, such as a warehouse lender, shall be shown as released on the MERS® System when the security interest has been released in accordance with the methods and procedures established among the interim funding lender, the lender granting the security interest and the subsequent purchaser of such mortgage loan, if any, as specified below.

*Section 2.*    An interim funding lender's security interest shall be shown as released on the MERS® System: (i) for investors selecting Option 1 of the Procedures, when the beneficial owner registers its interest on the MERS® System; or (ii) for investors selecting Option 2 of the Procedures, when the beneficial owner registers its ownership of the loan and the interim funding lender registers the release of its security interest on the MERS® System.

*Section 3.*    In the event that Member provides to MERS specific wiring instruction information relating to mortgage loans registered on the MERS® System, MERS and Member agree that:  (i) such information is for informational purposes only, (ii) Member makes no representations or warranties about the accuracy and completeness of such information, and (iii) Member shall not be liable to MERS, any other member, or any other party based on the provision of, and reliance on, such information.

## RULE 11

## SERVICES

MERS shall provide, either directly or through a third party, all services, resources, software, equipment and facilities (collectively, the "Services") as determined from time to time by the Board of Directors of MERS and described more particularly in the Procedures. MERS shall provide the Services in compliance with reasonable performance standards (the "Performance Standards") as determined from time to time by the Board of Directors of MERS and described more particularly in the Procedures.

## RULE 12

## WARRANTIES

*Section 1.*    Work Standards.  MERS represents and warrants that the Services shall be rendered with promptness and diligence in accordance with the practices and high professional standards used in well-managed operations performing services similar to the Services and shall be performed in a workmanlike and cost effective manner.  MERS represents and warrants that it shall use, and shall require all third-party vendors to use, adequate numbers of qualified personnel with suitable training, education, experience, and skill to perform the Services and satisfy the Performance Standards.

*Section 2.*    Maintenance.  MERS represents and warrants that the equipment and software used in the performance of the Services shall be maintained so that they operate in accordance with the Performance Standards, including (i) maintaining such equipment in good operating condition, subject to normal wear and tear, (ii) undertaking prudent repairs and preventive maintenance on such equipment, and (iii) performing prudent software maintenance, including timely updating software used in the performance of the Services, including the MERS® System, to meet any applicable legal or regulatory changes.

*Section 3.*    Technology.  MERS represents and warrants that the Services shall be provided using proven technology which shall take advantage of technological advancements in the industry.

Section 4. <u>Non-Infringement.</u> MERS represents and warrants that it shall, and shall require its Third Party Vendors to, perform its responsibilities in a manner that does not infringe, or constitute an infringement or misappropriation of, any patent, copyright, trademark, trade secret or other propriety rights of any third party.

Section 5. <u>Software Ownership or Use.</u> MERS represents and warrants that, with respect to the software used in the performance of the Services, it either owns, or is authorized to use, the software in the performance of the Services.

Section 6. <u>Authorization.</u> MERS represents and warrants that it has the requisite corporate power and authority to carry out its responsibilities.

Section 7. <u>Viruses.</u> MERS represents and warrants that it and any third-party vendors providing the Services shall not code or introduce any Viruses (defined herein) into the MERS® System and any other systems and software used to provide the Services and it shall take reasonable business precautions to ensure that no Viruses are coded or introduced into the MERS® System and any other systems and software used to provide the Services. The term "Viruses" shall mean any (i) program code, programming instruction or set of instructions intentionally construed with the ability to damage, interfere with or otherwise adversely affect computer programs, data files or operations; or (ii) other code typically designated to be a virus.

Section 8. <u>Disabling Code.</u> MERS represents and warrants that it and any third-party vendor providing the Services shall not insert into the MERS® System and in any other systems

and software used to provide the Services any code which would have the effect of disabling or otherwise shutting down all or any portion of the MERS® System or Services.

Section 9.    Millennium Compliant.    MERS represents and warrants that the MERS® System shall have the ability to provide all of the following functions:  (a) consistently handle date information before, during and after January 1, 2000, including without limitation accepting date input, providing date output, and performing calculations on dates or portions of dates; (b) function accurately and without interruption before, during and after January 1, 2000, without change in operations associated with the advent of the new century; (c) respond to two-digit year-date input in a way that resolves any ambiguity as to century in a disclosed, defined, and predetermined manner; and (d) store and provide output of date information in ways that are unambiguous as to century.

Section 10.    Licensing and Qualification. MERS    and    Mortgage    Electronic Registration Systems, Inc. represents and warrants that each has obtained all state licenses and has qualified to conduct business in all fifty states and the District of Columbia where such licensing and/or qualification is required by law for an entity serving as mortgagee of record, solely as nominee, in an administrative capacity, for the beneficial owner thereof.

Section 11.    Disaster Recovery Plan.        MERS represents and warrants to the Member that it has in place and will continue to maintain a fully effective disaster recovery plan. MERS will routinely (no less often than once per year) test its disaster recovery plan to ensure its

continued effectiveness and capability of protecting its Members in the event of a disaster. MERS will provide the results of such test to the a Member in writing upon request.

# RULE 13

## INDEMNIFICATION

*Section 1.* MERS and Mortgage Electronic Registration Systems, Inc. agree to indemnify the Member and the Member agrees to indemnify MERS and Mortgage Electronic Registration Systems, Inc. in accordance with Section 9 of the MERS Terms and Conditions . In addition to Section 9 of the Terms and Conditions, the following provisions shall apply:

(a) the indemnified party may but shall not be obligated to participate in the defense at its own expense and using counsel of its own choosing; provided, however, that the indemnifying party has the right to control the defense.

(b) the indemnified party shall cooperate and provide assistance as the indemnifying party reasonably requests and shall be entitled to recover reasonable costs of providing assistance.

(c) the indemnifying party shall keep the indemnified party informed on status of claim and litigation.

(d) the indemnifying party shall not, without indemnified party's written consent, compromise or settle the claim if such compromise or settlement would impose an injunction or other equitable relief upon indemnified party or such compromise or settlement does not include the third party's release of the indemnified party.

(e) if indemnifying party fails to timely defend, contest or otherwise protect against the claim and fails to contest in writing the indemnified party's right to indemnification, the indemnified party may, but shall not be obligated to defend and make any compromise or settlement and recover the costs thereof from the indemnifying party.

(f) If the indemnifying party contests in writing the indemnified party's right to indemnification, then the indemnified party shall defend the claim and may seek to recover all expenses paid by the indemnified party from the indemnifying party, and if successful, shall not be liable to pay the fees and expenses of initiating the mediation or arbitration pursuant to the Member Agreement.

# RULE 14

## NOTIFICATION TO MERS OF PENDING LAWSUITS

## AND ADDITIONAL INDEMNIFICATION PROVISIONS

Section 1.  The provisions set forth in this Rule 14 are in addition to those provisions set forth in

Rule 13 of the MERS Rules of Membership and Paragraph 9 of the MERS Membership Terms

and Conditions.  To the extent that any provision of this Rule 14 conflicts with any provision of

Rule 13 of the MERS Rules of Membership or Paragraph 9 of the MERS Membership Terms

and Conditions, the provisions of this Rule 14 shall control.

Section 2.  Without regard to responsibility under Paragraph 9 of the MERS Membership Terms

and Conditions:

(a)     It is the Member's affirmative duty to immediately notify MERSCORP,

Inc. of any and all lawsuits or written threats to initiate lawsuits that (i) involve a mortgage loan

in which the Member has ownership rights, servicing or subservicing rights, secured interests, or

any other significant right or interest, and (ii) name (or threaten to name) MERSCORP, Inc.

and/or Mortgage Electronic Registration Systems, Inc. (whether or not the Member is also a

named party).

(b)     The Member shall notify MERSCORP, Inc. of any claims that are filed

against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (whether or not

the Member is also a named party) in response to a proceeding initiated by such Member (either

in its own name or in the name of MERSCORP, Inc. and/or Mortgage Electronic Registration

Systems, Inc.), including without limitation counterclaims that are filed in response to a

foreclosure action commenced by the Member in the name of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc.

(c)    If the Member has transferred or otherwise terminated its rights and interests in a mortgage loan, and receives notice of a lawsuit, a written threat to initiate a lawsuit or a claim (as such lawsuits, threatened lawsuits and claims are described in Section 2(a) and (b) of this Rule 14) from the MERSCORP, Inc. mailroom, the Member must notify MERSCORP, Inc. of (i) such lawsuit, threatened lawsuit or claim, and (ii) the transfer or termination of the Member's rights and interests in the subject mortgage loan.

Section 3.   The Member shall notify MERSCORP, Inc. of all lawsuits, threatened lawsuits or claims (as such lawsuits, threatened lawsuits and claims are described in Section 2(a) and (b) of this Rule 14), regardless of the method, person or entity by which the Member receives notice of such lawsuits, threatened lawsuits or claims.

(a)    All notifications required by this Rule 14 shall include (as applicable):

(i)    the name of the lawsuit, and the county, state and court in which the lawsuit is filed;

(ii)    the Mortgage Identification Number (MIN) of the mortgage loan involved;

(iii)    the date the complaint was filed and the date the Answer is due;

(iv)    the name and phone number of the contact person of the Member with respect to the subject lawsuit, threatened lawsuit or claim (which may be in-house counsel);

(v)    the name and telephone number of the attorney and law firm, if any, retained by the Member with respect to the subject lawsuit or claim; and

(vi)    a copy of all pleadings with respect to the subject lawsuit or claim in the possession of the Member or a copy of the written threat to initiate a lawsuit (as applicable).

(b)    All notices required by this Rule 14 shall be sent to the attention of the General Counsel of MERSCORP, Inc. either via fax to (703) 748-0183 (which is confirmed by transmission report or equivalent thereof), via e-mail to mers@mersinc.org (which is confirmed by delivery report or equivalent thereof), via registered or certified mail (return receipt requested and postage prepaid) to 1818 Library Street, Suite 300, Reston, VA  20190, or via a nationally recognized overnight courier (prepaid and providing proof of delivery) to 1818 Library Street, Suite 300, Reston, VA  20190.

(c)    A Member shall in no way be relieved of its obligations under Paragraph 9 of the MERS Membership Terms and Conditions by (i) the failure of the Member to receive proper notification from a third party with respect to a lawsuit, threatened lawsuit or claim, or (ii) the proper notification, pursuant to this Rule 14, of a lawsuit, threatened lawsuit or claim from the Member to MERSCORP, Inc.

Section 4.  It is the responsibility of the Member to inform its retained counsel of the Member's indemnification obligations under the MERS Membership Terms and Conditions and the MERS Rules of Membership (including without limitation this Rule 14).  With respect to

a Member Indemnified Claim (as that term is defined in Paragraph 9 of the MERS Membership Terms and Conditions), Member and/or its retained counsel shall take all necessary and appropriate actions to assert promptly valid defenses available to MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable), even if such defenses are unavailable to the Member, including without limitation the defense that the claim against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) should be dismissed as a claim against an inappropriate party.

(a)     If a Member and/or its retained counsel fails to acknowledge in writing its obligations (including its obligation to defend) under Paragraph 9 of the MERS Membership Terms and Conditions with respect to a Member Indemnified Claim, within the earlier date of (i) thirty (30) days after receipt by the Member of notice of the Member Indemnified Claim, either from MERSCORP, Inc., Mortgage Electronic Registration Systems, Inc. or a third party, and (ii) thirty (30) days prior to the deadline for MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) to submit an initial response to the Member Indemnified Claim, then MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) shall have the right (but not the obligation) to hire independent counsel and to undertake the defense, settlement and/or compromise of such Member Indemnified Claim on behalf of, and at the sole expense of, the Member.

(b)     Regardless of whether a Member, MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. defended a Member Indemnified Claim or none of these entities defended such claim, and regardless of whether MERSCORP, Inc. and/or Mortgage

Electronic Registration Systems, Inc. had notice of the Member Indemnified Claim, if a judgment is entered against MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. for such claim, the Member shall immediately post a Surety Bond or Letter of Credit for the amount of the judgment pending any motions to set aside or vacate the judgment;  or appeal of the judgment; or any challenges made by either the Member or MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. to the judgment.  It is the Member's responsibility to pay the amount of the judgment and any other related Indemnified Payments (as that term is defined in Paragraph 9 of the MERS Membership Terms and Conditions) on behalf of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable), and (ii) if MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. defends against the enforcement of a judgment (which MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. shall have the right to do in its discretion), the Member shall promptly reimburse MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc. (as applicable) the amount of the Indemnified Payments related to such defense.

(c)    With respect to a Member Indemnified Claim, the Member shall provide MERSCORP, Inc. with (i) copies of all public pleadings it receives from third parties (and notice of protected pleadings it receives from third parties), (ii) copies of all public pleadings it files on its own behalf, and (iii) copies of all pleadings it files on behalf of MERSCORP, Inc. and/or Mortgage Electronic Registration Systems, Inc.

Section 5.  The obligations of the Member under this Rule 14 shall survive the termination of the Member's use of the MERS® System

**EXHIBIT C**



# TERMS AND CONDITIONS

1.  MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request.    The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party.  The Member shall be bound by any amendment to any of the Governing Documents.

2.  The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System.  MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.  MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties.  References herein to "mortgage(s)" and "mortgage of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3.  MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes.  In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4.  No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5.  If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6.  MERS and the Member agree that:  (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7.  If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS.  The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member.  The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8.  The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time.  The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time.  MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9.  MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member  ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim").  Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, Virginia, 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute"), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

**EXHIBIT D**

# MIN SUMMARY



**Summary**

1004252-4000837059-2

866 LEONARD DR
WESTBURY, NY 11590

Active (Registered)
Foreclosure pending (Option 1), assigned to servicer
MOM
First Lien

| | | | |
|---|---|---|---|
| Reg Date | 06/16/2006 | | |
| County | Nassau | QR | N |
| Primary Borrower | AGARD, FERREL | SSN | ▇▇▇▇ |
| Pool Number | N/A | Investor Loan Number | N/A |
| Note Amount | $416,000.00 | Note Date | 06/14/2006 |
| Servicer | 1000938 - Select Portfolio Servicing Inc | | |
| Custodian | 9999999 - Non-MERS Member | | |
| Investor | 1001065 - U.S. Bank as Trustee | | |
| Subservicer | N/A | | |
| Interim Funder | N/A | | |
| Originating Organization | N/A | | |
| Property Preservation Co. | N/A | | |

## Pending Batches

| Batch Number | Transfer Type | Status | Transfer Date | Sale Date |
|---|---|---|---|---|
| No Pending Batches! | | | | |

# MILESTONES for 1004252-4000837059-2



| Description | Date | Initiating Organization / User | Milestone Information |
|---|---|---|---|
| Transfer Seasoned Servicing Rights | 10/09/2008 | 1004273 Home Loan Services, Inc.<br><br>Batch | MIN Status: Active (Registered)<br>New Servicer: 1000938 Select Portfolio Servicing Inc<br>Old Servicer: 1004273 Home Loan Services, Inc.<br>Batch Number: 5792075<br>Sale Date: 10/01/2008<br>Transfer Date: 10/01/2008 |
| Foreclosure Status Update | 09/30/2008 | 1004273 Home Loan Services, Inc.<br><br>Batch | MIN Status: Active (Registered)<br>Foreclosure Status: Foreclosure Pending (option 1), assigned to servicer<br>Quality Review: N |
| Foreclosure Status Update | 03/25/2008 | 1004273 Home Loan Services, Inc.<br><br>Batch | MIN Status: Active (Registered)<br>Foreclosure Status: Foreclosure Pending (option 2), retained on MERS<br>Quality Review: Y |
| Transfer Beneficial Rights - Option 2 | 08/30/2006 | 1004273 Home Loan Services, Inc.<br><br>Batch | MIN Status: Active (Registered)<br>New Investor: 1001065 U.S. Bank as Trustee<br>Old Investor: 1000487 Aurora Bank FSB<br>Batch Number: 3730539<br>Transfer Date: 08/30/2006 |
| Transfer Beneficial Rights - Option 2 | 08/01/2006 | 1004273 Home Loan Services, Inc.<br><br>Batch | MIN Status: Active (Registered)<br>New Investor: 1000487 Aurora Bank FSB<br>Old Investor: 1004252 First Franklin Financial Corporation<br>Batch Number: 3660005<br>Transfer Date: 07/31/2006 |
| Registration | 06/16/2006 | 1004273 Home Loan Services, Inc.<br>Batch | MIN Status: Active (Registered)<br>Servicer: 1004273 Home Loan Services, Inc. |