UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In Re:

**FERREL L. AGARD**,

*Debtor.*

Chapter 7

Case No. 10-77338-REG

**SUPPLEMENTAL BRIEF OF
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
IN FURTHER SUPPORT OF MOTION TO LIFT STAY**

**PRELIMINARY STATEMENT**

On December 13, 2010, the Court held a hearing on Select Portfolio Servicing, Inc. motion for relief from automatic stay with regard to the property commonly known as 866 Leonard Drive, Westbury, New York (the "Property"). At the hearing, the Court granted Mortgage Electronic Registration Systems, Inc.'s ("MERS") motion, by order to show cause, to intervene in the instant proceeding and invited the parties to submit information and briefs to supplement the record before the Court in response to issues raised at the hearing.

Intervenor, MERS, submits this Supplemental Brief in further support of the Motion of Select Portfolio Servicing, Inc., as servicer for U.S. Bank, National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-FF12 Mortgage Pass Through Certificates, Series 2006-FF12 ("Select Portfolio") Seeking to Terminate the Automatic Stay ("Select Portfolio's Motion"), and to further demonstrate that MERS has the right and authority to execute the assignment of mortgage at issue in this proceeding, and that right has been given full force and effect by the courts of the State of New York, U.S. Bankruptcy Courts and other courts and jurisdictions.

**FACTUAL BACKGROUND**

The loan at issue originated on June 9, 2006 when the debtor, Ferrel L. Agard ("Debtor") executed and delivered a Note and Mortgage in the amount of $416,000.00 secured by the Property. The Note was executed by the Debtor to First Franklin, A Division of National City Bank of Indiana ("First Franklin"). To secure repayment of the Note, Debtor executed the Mortgage to MERS as nominee for First Franklin, and its successors and assigns. A copy of the Mortgage is attached to the Affirmation of William C. Hultman, dated December 10, 2010 as Exhibit A ("Hultman Aff."). The Debtor granted the Mortgage to MERS and upon the recording of same, MERS was the mortgagee of record.

On February 1, 2008, MERS, as nominee for First Franklin and its successors and assigns, executed an Assignment of Mortgage ("Assignment of Mortgage") to U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-FF12, Mortgage Pass-through Certificates, Series 2006-FF12 ("US Bank"). The Debtor defaulted under the terms of the Note and Mortgage, and a foreclosure action was commenced by US Bank by filing a Summons and Complaint with the Office of the County Clerk for the County of Nassau on March 24, 2008.

First Franklin, Aurora Bank FSB, formerly known in MERS membership records as Lehman Brothers Bank ("Aurora"), and US Bank were or are all members of the MERS® System. *See* MERS MIN (Mortgage Identification Number) Summary and Milestones Report attached to the Declaration of William C. Hultman, dated December 22, 2010 ("Hultman Dec.") as Exhibit D. The following discussion and argument sets forth the background on MERS, and an explanation of the MERS® System and MERS Membership.

## ARGUMENT

### I. Background on MERS' History and Operation

Mortgage Electronic Registration Systems, Inc. and MERSCORP, Inc. were developed by the real estate industry to serve as the mortgagee of record and operate an electronic registration system for tracking interests in mortgage loans. The New York courts have noted the unique background and role of MERS. As the New York State Court of Appeals explained in *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006), the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. Members of the MERS® System also include entities such as insurance companies, title companies and banks (collectively the "MERS Members"). Specifically, the MERS® System tracks the transfers of mortgage servicing rights and beneficial ownership interests in mortgage loans on behalf of MERS Members.

#### A. Lenders and the Residential Lending Market

When a mortgage lender loans money to a home buyer, it obtains two documents: (1) a promissory note in the form of a negotiable instrument from the borrower; and (2) a mortgage instrument granting secured interests in the property as collateral to repay the note. The mortgage or secured instrument, as distinguished from the note, establishes the lien on the property that secures the repayment of the loan.

The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and originating lenders routinely sell these notes on the secondary markets to investors. *Mortgage Electronic Registration Systems, Inc. v. Bellistri*, 2010 WL 2720802 *6 (E.D. Mo. July 1, 2010). "The ability of lender to replenish their capital by selling loans in the

secondary market is what makes money accessible for home ownership." R.K. Arnold, *Yes, There is Life on MERS*, 11 Prob. & Prop. 32, 34 (August 1997).

Because investors in the secondary mortgage market often consist of institutional entities, such as mutual funds and insurance companies, those entities often contract with servicing companies to handle the loan servicing obligations, such as the right to collect monthly escrow, principal, and interest payments from the borrower. *Bellistri*, 2010 WL 2720802, *6. When loans are bought and sold, both the beneficial rights and servicing rights are generally transferred. *Id.* Prior to MERS, the investor or its assignee would typically hold the note, with the servicing entity appearing as the mortgagee in the land records on file at the County Clerk's office. *Id.*

### B.  How MERS Works

The MERS® System is designed to allow its members, which include originators, lenders, servicers, and investors, to sell home mortgage loans without having to record each transfer in the County Clerk's office because MERS remains the mortgagee by contractual agreement between MERS and the lenders. *Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268. *See also*, Hultman Dec. at ¶ 9. MERS holds legal title to a security interest under a deed of trust or a mortgage for the original lender, and its successors and assigns, and tracks changes in those mortgage interests in order to eliminate the need for frequent, recorded assignments of subsequent transfers. *Bellistri*, 2010 WL 2720802 at *8.

Prior to MERS, every time a loan secured by a mortgage was sold, the assignee would need to record the assignment to protect the security interest. *Id.* If a servicing company serviced the loan and the servicing rights were sold, -- an event that could occur multiple times during the life of a single mortgage loan -- multiple assignments were recorded to ensure that the proper

servicer appeared in the land records in the County Clerk's office. This enabled the current servicer to receive notices of actions affecting the security interest, for example, notice of municipal tax lien sales, service of process in legal proceedings, etc. *See Bellistri*, 2010 WL 2720802 at *7. These multiple assignments led to errors and uncertainty in the chain of title because assignments were often missing, incomplete, inaccurate, or misfiled.[1] *Id.* In situations where the recorded assignment identified the wrong property, a lender was at risk of failing to perfect its lien on the mortgaged property and instead may have mistakenly clouded the title of some unrelated third party.

### C.  The MERS® System

At the origination of the loan by a lender who is a MERS Member, the lender takes possession of the note (and becomes the holder of the note), and the borrower and lender designate MERS (as the lender's nominee) to serve as the mortgagee or beneficiary of record. The lender's secured interest is thus held by MERS. *Bellistri*, 2010 WL 2720802 at * 7. MERS' Rules, which are incorporated into all MERS' agreements with its members, provide that members "shall cause Mortgage Electronic Registration System, Inc. to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System." *See* Hultman Dec. at ¶ 5 and Exhibits B and C thereto.

Accordingly, when a MERS Member originates a loan, the original lender and the borrower contractually agree in the mortgage that MERS will be the mortgagee and will serve as nominee for the lender and its successors and assigns. *Bellistri*, 2010 WL 2720802 at * 7. In the event of a default on the loan, MERS as the beneficiary or mortgagee, is authorized to foreclose

---

[1] Additionally, these transactions were burdensome and required expensive attorneys' fees to prepare the assignments and filing fees to record them. *Id.* Ultimately, it was the buyers and sellers of real estate who shouldered these expenses. The best estimates were that these issues added at least $30 to the cost of a typical loan, and far more if errors were made. Steve Cocheo, *Moving from Paper to Blips (the proposed Mortgage Electronic Registration System)* 88 American Bankers Ass'n Bankers J. 48 (January 1996).

on the home. *Id.* After the borrower signs the mortgage agreement, it is recorded in the public, local land records with MERS as the named beneficiary or mortgagee. *Id; see also* Hultman Dec. at ¶ 5-6.

The MERS Member then registers the mortgage loan information from the security instrument on the MERS® System. *Id.* When the beneficial interest in a loan is sold, the promissory note is still transferred by an endorsement and delivery from the buyer to the seller, but MERS Members are obligated to update the MERS® System to reflect the change in ownership of the promissory note. *See* Hultman Dec., Exhibit B, Rule 2, Section 5.

So long as the sale of the note involves a MERS Member, MERS remains the named mortgagee of record, and continues to act as the mortgagee, as the nominee for the new beneficial owner of the note (and MERS' Member). The seller of the note does not and need not assign the mortgage because under the terms of that security instrument, MERS remains the holder of title to the mortgage, that is, the mortgagee, as the nominee for the purchaser of the note, who is then the lender's successor and/or assign. Hultman Dec. at ¶ 9. Accordingly, there is no splitting of the note and mortgage for loans in the MERS® System.[2] If, however, a MERS' Member is no longer involved with the note after it is sold, an assignment from MERS to the party who is not a MERS Member is executed by MERS, that assignment is recorded in the County Clerk's office where the real estate is located, and the mortgage is "deactivated" from the MERS® System. Hultman Dec. at ¶ 12.

MERS also provides something land records cannot: quick and accurate identification of the mortgage servicer. Since MERS' records are electronic, MERS can provide instantaneous on-line access to information about who holds a particular mortgage loan and who is servicing it.

---

[2] "[A] MERS assignment does not violate [New York's] long-standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void." *See U.S. Bank, N.A. v. Flynn*, 27 Misc.3d 802, 806, 897 N.Y.S.2d 855 (Sup. Ct. Suffolk Co. 2010).

S. Nelson & Dale A. Whitman, 1 Real Estate Finance Law § 5.34 (5th Ed. 2007 update). This is significant for consumers because servicers are usually the only parties with access to the mortgage loan payoff statement, information that, for example, helps homeowners avoid foreclosure, exercise their right of redemption and close on the sale of their home. Hultman Dec. at ¶ 16.

At any time, the homeowner can gain access to the information contained on the MERS® System to determine the current servicer of their mortgage loan. MERS provides a toll free number that appears on every recorded document naming MERS as the mortgagee. The homeowner can also get information on the current servicer of their mortgage loan from the MERS website, www.mersinc.org. When Congress acted last year to require that borrowers be informed when their note is sold and the identity of the new note owner, MERS established within a matter of weeks a new service called Investor ID. Of MERS' 3,000 members, 97% agreed to disclose the identity of the note owner through MERS® System. Borrowers now can also access the name of their note owner by using the information on the MERS® System.

## II.     The Mortgage and the MERS Rules of Membership

On June 9, 2006, the Debtor executed and delivered the Note to First Franklin. To secure repayment of the Note, Debtor executed and delivered the Mortgage to MERS as mortgagee and nominee for First Franklin, and its successors and assigns. As of the date of the Note and Mortgage, and throughout the relevant time period, First Franklin was a MERS Member subject to the MERS Rules of Membership. Hultman Dec. at ¶ 10. Pursuant to the MERS' Rules of Membership, the Mortgage names MERS as the mortgagee, in its capacity as nominee for the lender and the lender's successors and assigns as follows:

> "MERS" Mortgage Electronic Registration Systems, Inc. **MERS** is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns …
>
> **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
>
> (Bold in the original).

Hultman Dec. at ¶ 21.

The Mortgage further provides:

> … "MERS only holds legal title to the rights granted by me [Borrower] in this Security Instrument, but, if necessary to comply with law or custom, MERS **(as nominee for Lender and Lender's successors and assigns) has the right:**
>
> (A) **to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and**
> (B) **to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument.**

(Emphasis Added). Hultman Dec. at ¶ 21.

As stated in the Debtor's Mortgage, MERS is identified as a separate corporation acting as nominee for the Lender, and Lender's successors and assigns, and MERS is the mortgagee of record therein.

On February 1, 2008, prior to commencing the mortgage foreclosure proceeding involving the Debtor and Debtor's Property, upon the direction of US Bank, a member of MERS, MERS executed an Assignment of Mortgage whereby MERS assigned all of its rights and interest in the Debtor's Mortgage to US Bank. According to MERS' records, US Bank was the entity in possession of and the holder of the promissory Note executed by the Debtor and therefore, upon delivery of the Assignment of Mortgage US Bank held all right, title and interest in the Note and Mortgage. The Milestones Report attached to the Hultman Dec. as Exhibit D, is

not representative of assignments of the mortgages. Rather, as stated above, MERS electronically tracks transfers of beneficial ownership interests in the promissory note and/or loan servicing rights. Beneficial interests in mortgage loans and/or servicing rights to such loans are not "assigned" by MERS. The MERS® System is not a vehicle used to create or transfer beneficial interests in mortgage loans. Hultman Dec. at ¶ 24.

### III.    MERS Has Authority to Execute Mortgage Assignments and Other Instruments

It is well settled law that in cases wherein "the plaintiff is the assignee of the mortgage and underlying note at the time the foreclosure action was commenced, the plaintiff has standing to maintain the action." *Countrywide Home Loans v. Gress*, 68 AD3d 709, 888 N.Y.S.2d 914, 68 A.D.3d 709, 888 N.Y.S.2d 914 (2d Dep't 2009) (*quoting Federal Natl. Mtg. Assn. v. Youkelsone*, 303 A.D.2d 546, 546-547, 755 N.Y.S.2d 730 (2d Dep't 2003)); *see also Wells Fargo Bank v. Marchione*, 69 A.D.3d 204, 887 N.Y.S.2d 615 (2d Dep't 2009); *First National Trust Assn. v. Meisels*, 234 A.D.2d 414, 651 N.Y.S.2d 121 (2d Dep't 1996). Here, at the commencement of the Mortgage foreclosure proceeding of the Property, US Bank held the Note, and had received a written Assignment of Mortgage executed by MERS as nominee of the original lender and its successors in favor of US Bank. Hultman Dec. at ¶ 24.

The Mortgage clearly demonstrates First Franklin's delegation of authority to MERS, and the borrower's acknowledgement and acceptance of MERS as the disclosed agent of the lender, and its successors and assigns. The Mortgage plainly states that MERS holds legal title in its capacity "as nominee for the Lender and the Lender's successors and assigns." Hultman Dec. at ¶ 6, 10 and 21. The Mortgage also grants MERS broad rights, again as nominee for lender and lender's successors and assigns, "to exercise any or all" of the interests granted by the borrower

under the Mortgage, including but not limited to, the right to foreclose and sell the Property; and to take any action required of the Lender ..." *Id.*

This is more than sufficient to create an agency relationship between MERS and First Franklin and First Franklin's successors in interest. No particular words or conduct are necessary to create an agency relationship in New York. *Standard Builders Supplies v. Gush*, 206 A.D.2d 720 (3d Dep't 1994). All that is required is a manifestation of the parties' assent that the agent will act on behalf of the principal and subject to his control. *Id.* An agency relation arises where, as here, one party is specifically authorized to act on behalf of another in dealings with third persons.

Courts have found the same language in a mortgage instrument to grant MERS the authority to assign the mortgage. *U.S. Bank, N.A. v. Flynn*, 27 Misc.3d 802; 897 N.Y.S. 2d 855 (Suffolk Co. 2010) (finding that language in the mortgage instrument conferring broad authority to act in all ways that the original lender could act, including "releasing … the mortgage" was sufficient to confer authority to MERS as nominee to assign the mortgage); *Crum v. LaSalle Bank, N.A.*, 2009 Ala. Civ. App. LEXIS 491, * 7 (Ala. Civ. App. Sept. 18, 2009) (challenge to assignment by MERS as nominee of the owner of note and mortgage rejected where the language of the mortgage indenture conferred upon MERS, as nominee, broad authority to act on behalf of the lender, including being empowered "to take any action required of the lender").

In *U.S. Bank, N.A. v. Flynn*, the State of New York Supreme Court, Suffolk County held:

> where, as here, an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, **a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment.** In such cases, MERS

> is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record.  No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender of a successor owner or holder of the note and mortgage.  Consequently, a MERS assignment does not violate this State's long-standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void.
>
> \* \* \*
>
> **A foreclosure plaintiff thus has standing where its ownership of the note and mortgage derives from an assignment issued by a nominee named in the mortgage indenture, qualified as above, and such assignment is complete prior to the commencement of such action.**

27 Misc.3d at 802.  (Emphasis added).

Other courts have found that language contained in a mortgage instrument conferred standing upon a foreclosing plaintiff.  In *Mortgage Elec. Registration Sys. v. Coakley*, 41 A.D.3d 674, 838 N.Y.S.2d 622 (2d Dep't 2007) the court sustained the standing of MERS to sue as a foreclosing plaintiff in the face of a challenge thereto.  The court found that MERS had ownership of the note by virtue of an endorsement and that ownership of the mortgage followed as an incident of the transfer of the note. The court then focused on the powers conferred upon MERS under the mortgage indenture and noted as follows:

> Moreover, further support for MERS's standing may be found on the face of the mortgage instrument itself. Coakley expressly agreed without qualification that MERS had the right to foreclose in the event of a default (*see Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d 99, 100, 735 N.Y.S.2d 13; *Airlines Reporting Corp. v. S & N Travel*, 238 A.D.2d 292, 293, 656 N.Y.S.2d 299; *College Mgt. Co. v Belcher Oil Co. Of N.Y.*, 159 A.D.2d 339, 341, 552 N.Y.S.2d 616).

*Coakley*, 481 A.D.3d at 675.

Courts in various other jurisdictions have upheld the standing of MERS, as nominee, to prosecute a foreclosure action where the mortgage indenture at issue confers upon such nominee broad powers to act as the lender or its successors and assigns may act. *See Morgera v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 2037, 2010 WL 160348 (E.D. Cal. Jan. 1, 2010); *Bucci v. Lehman Bros. Bank, FSB*, 2009 R.I. Super. LEXIS 110, (Sup Ct. R.I. Aug. 25, 2009); *Mortgage Elec. Registration Sys. v. Revoredo*, 955 So.2d 33 (3d Dist. Ct. of Appls. Fla. 2007); *Hilmon v. Mortgage Elec. Registration Sys.*, 2007 U.S. Dist. LEXIS 29578 (E. Dist. Mich. 2007); *In re Huggins*, 357 BR 180 (U.S. Bankruptcy Ct. D.Mass 2006).

Further, at all relevant times noted herein, the original lender, First Franklin, was a MERS Member. Hultman Dec. at ¶ 10. Each MERS Member, including First Franklin, affirms its agency relationship with MERS by executing MERS' Membership Agreement, which provides that MERS "shall" serve as mortgagee of record with respect to each mortgage loan that the member registers on the MERS® System and provides that MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. *See* Hultman Dec. at ¶ 5. As a MERS Member, First Franklin executed a Membership Agreement with MERS under which it contractually agreed that MERS shall act as its agent to hold the Mortgage as nominee on First Franklin's behalf, and on behalf of First Franklin's successors and assigns. *See* Hultman Dec. at ¶¶ 5-6. Thus, even if the Court were to determine that the language on the face of the Mortgage instrument is insufficient to grant MERS the authority to assign the Mortgage, the Membership Agreement executed by First Franklin and the MERS Rules of Membership clearly grants such authority.

## IV.     MERS Assists The Mortgage Industry

Contrary to the Debtor's false claim, the practice of negotiation of promissory notes in the secondary mortgage market is common and lawful. The MERS® System does not void or adversely affect such negotiations, let alone make such transactions fraudulent. It is necessary to understand the function of MERS in the mortgage market and its relationship to loan servicers and investors in the secondary mortgage market such as Freddie Mac and Fannie Mae. The mortgage market in the United States comprises primary and secondary components. One court described it in this way:

> Mortgage originators make residential mortgage loans to borrowers in the primary mortgage market. Investors, such as FHLMC [Freddie Mac], subsequently purchase these loans from lenders. The mortgage originators then use the proceeds from the sales to make additional mortgage loans. When the secondary market purchasers buy the mortgages, they often bundle the majority of mortgages together into mortgage-backed securities, which are sold to third-party investors. The secondary market owner then guarantees the third-party investor the return of the principal portion of the mortgages plus a portion of the interest paid over the life of the loan. The mortgage servicer and the secondary market purchaser also receive a portion of the interest.

*Hashop v. Fed. Home Loan Mort. Corp.*, 171 F.R.D. 208, 210 (N.D. Ill. 1997). The ability of owners and servicers of mortgage loans to freely transfer rights in such loans on the secondary market facilitates the continuous flow of capital of funds from capital markets to American housing markets, allowing homeowners nationwide to benefit from lower housing costs and better access to home financing. Hultman Dec. at ¶ 14.

Debtor's Supplemental Affirmation in Opposition dated December 20, 2010 ("Supp. Aff. Opp.") erroneously and speculatively challenges "as void or fraudulent" the transfers of promissory notes by and among MERS Members. Debtor's baseless charge totally misapprehends the negotiation of promissory notes under New York law. First, consider that the

New York Uniform Commercial Code (U.C.C.) at §3-202 (1) governs the negotiation of instruments, which includes promissory notes (U.C.C. §3-104 (2)(d)), and it provides:

> Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary endorsement; if payable to bearer it is negotiated by delivery.

Clearly, by this statute, delivery of the note to the transferee completes the transfer, and pursuant to U.C.C. §1-201(14), delivery of an instrument "means the voluntary transfer of possession." Therefore, possession of the note by the transferee is all that is required to be the transferee or holder thereof.

Second, courts have uniformly held that possession of the note puts everyone who deals with a recorded mortgage on notice of the outstanding claim of the note holder. *Kellogg v. Smith*, 26 N.Y. 18 (1862); *Syracuse Savings Bank v. Merrick*, 182 N.Y. 387 (1905). A negotiation or transfer of the note can be accomplished by mere delivery of the note to the transferee, therefore, the mortgage will follow the note and pass as an inseparable incident to the note. *Fryer v. Rockefeller*, 63 N.Y. 268, 276 (1875); *In Re Falls' Estate*, 31 Misc. 658, *aff'd* 67 A.D. 619 (1st Dep't 1900); *Becker v. Wells*, 297 N.Y. 275 (1948); *Flyer v. Sullivan*, 284 A.D. 697 (1st Dep't 1954).

Under this well-established law of New York, there is no legal requirement for an assignment of the mortgage to be in writing, or that the assignment of the mortgage be recorded. This well-established rule, of course, can lead to situations where the note has been delivered and endorsed payable to a transferee of the original note holder or lender, but with the mortgage lien still of record in the name of the original lender or mortgagee. Stated otherwise, the fact that assignments of mortgages may be recorded, does not affect the validity of the transfer of the note, even though an assignment of a mortgage has not been written or recorded. *See Flyer*, 284

A.D. at 698-699 (citing numerous authorities); *In Re Stockbridge Funding Corp.*, 145 B.R. 797, 809 (Bankr. S.D.N.Y. 1992). Simply stated, the mortgage follows the note.

Third, the law of New York is that the holder of the note may foreclose on secured property, regardless of whether the mortgage assignment has been recorded. *Fryer v. Rockefeller*, 63 N.Y. 268 (1875); 78 NY Jur.2d, Mortgages and Deeds of Trust § 531 (West Group 2006). Similarly, "gaps" in the chain of the mortgage records do not preclude an assignee of a mortgage from foreclosing on the secured property, even though there is a record in the County Clerk's office of a different party as the mortgagee. *Andy Associates, Inc. v. Bankers Trust Company*, 49 N.Y.2d 13 (1979).

In sum, a note and mortgage are inseparable and constitute personal property that may be transferred by delivery without a written instrument of assignment. *Baird v. Baird*, 145 N.Y. 659 (1895). The absence of a recorded assignment of mortgage does not prohibit the transfer of rights in or the enforcement of the note and mortgage by the holder thereof. MERS does not change this well established practice and law. The MERS® System does not transfer mortgage interests or mortgage rights, nor does it generate electronic or unrecorded mortgage assignments. (Hultman Dec. at ¶ 24). As shown above, New York law does not require that assignments exist. Because MERS holds the mortgage lien for the lender who may freely transfer its interest in the note, without the need for a recorded assignment document in the land records, MERS holds the mortgage lien for any intended transferee of the note. MERS remains the lienholder in the land records. Contrary to the Debtor's erroneous assertion, "no disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender of a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long-standing rule that a transfer of a mortgage without a

concomitant transfer of the debt is void*.*" *U.S. Bank v. Flynn*, 27 Misc. 3d at 806. "[T]he fact that MERS is identified as the [mortgagee] under [the Mortgage] for the benefit of the note-holder does not create a split between the note and [Mortgage]." *In re Patricia Louise Tucker*, Case No. 10-61004 (Bankr. W.D. Mo. September 20, 2010).

## V. The Designation of MERS As Nominee Is Effective

MERS Mortgages clearly disclose that MERS serves as the mortgagee for record purposes, and as nominee for the lender, its successors and assigns. Hultman Dec. at ¶ 3. In this role, MERS represents the interests of the MERS Member lenders at the execution of the note and mortgage, as well as any other MERS Member to whom the lender transfers the note. This agency authority is explicitly granted pursuant to the MERS Governing Documents; specifically the MERS' Terms and Conditions at ¶ 2 which provides in pertinent part that:

> MERS shall serve as mortgagee of record with respect to all such mortgage loans **solely as a nominee, in an administrative capacity**, for the beneficial owner or owners thereof from time to time. (Emphasis added).

Hultman Dec. at ¶ 5 and Exhibit C thereto.

MERS Member lenders agree to accept such Terms and Conditions by signing the MERS application when they become MERS Members. Hultman Dec. at ¶ 5. Mortgage lenders and homeowners also accept MERS' nominee role or agency in the mortgage transaction when homeowners sign their mortgage instrument and the lender accepts such mortgage. Hultman Dec. at ¶ 8.

Debtor disregards the lender's clear delegation of authority to MERS, as its agent in the MERS Mortgage, and the borrower's explicit acknowledgement and acceptance of MERS as the agent of the lender, and its successors and assigns. As demonstrated, *supra*, the MERS

Mortgage expressly authorizes MERS to execute discharges, releases and other documents with respect to the mortgage and security instrument on record in the County Clerk's Office.

MERS' status as a "nominee" is a common occurrence in public land records. Individuals frequently confer rights to a "nominee," "agent," "fiduciary," or "trustee" to enable that individual to act on their behalf. Hultman Dec. ¶ 25. *See*, for example, New York Real Property Law ("RPL") § 124 *et seq.* with regard to trustees' powers in mortgage investments. The term "nominee" was defined in *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (7th Cir. 1938), as follows:

> The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, or as the grantee of another …

This definition has become accepted as the common meaning of "nominee." *See* Black's Law Dictionary 1076 (8th ed. Thompson West 2004). Nominees are often used by institutional investors in securities registration, which allow the investor to avoid onerous requirements of establishing the right of registration by a fiduciary. In addition, RPL §275(2)(a) expressly recognizes the commercial practice of lenders selling mortgages in the secondary market, as well as the practice of designating "nominees" as representatives in mortgage loan transactions.

It is well settled in New York that where a mortgage is signed by the mortgagor, delivered to and accepted by the mortgagee, **or its agent**, the mortgage constitutes a valid contract and security or lien. *See Munoz v. Wilson*, 111 N.Y. 295 (1888); *Wood v. Travis*, 231 A.D. 331 (3d Dep't 1931). The recording of a mortgage is presumptive evidence of delivery by the mortgagor and acceptance by the mortgagee. *See Preston v. Albee*, 120 A.D. 89 (1st Dep't 1907).

MERS' identification as the "mortgagee" in a "nominee" (that is, agency) capacity for the lender in a mortgage instrument fits squarely within the scope of persons authorized by New York Real Property Actions and Proceedings Law ("RPAPL") § 1921(9) (a):

> "Mortgagee" means (i) **the current holder of the mortgage of record** or the current holder of the mortgage, or (ii) any person to whom payments are required to be made or (iii) their personal representatives, **agents, successors, or assigns**. (Emphasis added).

Moreover, the mortgagor has named MERS as the "holder of the mortgage of record," and in the role of "nominee" or "agent" for the lender. In addition, and as shown above, the lender, as a MERS Member, has designated MERS as the mortgagee of record, as its nominee in the MERS Member Governing Document. Hultman Dec. at ¶ 5.

It is familiar practice in real estate transactions to use a nominee for a variety of purposes, including to execute or hold mortgage instruments. *Friedman on Contracts and Conveyances of Real Property* § 2.2 (7th Ed. Practicing Law Institute 2005). The validity of nominees in real property transactions has been upheld in New York. For example, in *In Re Cushman Bakery*, 526 F.2d 23, 30 (1st Cir. 1975) (*citing* New York law), *cert. denied* 425 U.S. 937 (1976), the court noted:

> … it is clear that the **recording of the real estate mortgages** and financing statements was **entirely proper despite the fact that Bakers, as Seaboard's nominee, rather than Seaboard, as the principal creditor, was named as the mortgagee and secured party. The use of a nominee in real estate transactions and as mortgagee in a recorded mortgage has long been sanctioned as a legitimate practice.** (Citations omitted) (Emphasis added).

The use of a nominee or agent as a representative of the mortgagor or the mortgagee has been upheld in New York. *See, e.g., Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d 99 (1st Dep't 2001) (holding that the servicing agent had standing to maintain a mortgage foreclosure proceeding in its capacity as servicing agent for the trustee lender); *Amherst Factors, Inc. v.*

*Kochenburger,* 4 N.Y.2d 203 (1958); *Mutual Life Ins. Co. v. Nichols*, 144 A.D. 95 (1st Dep't 1911); *In Re Fried Furniture Corp.*, 293 F. Supp. 92 (E.D.N.Y. 1968), *aff'd* 407 F.2d 360 (2d Cir. 1969).

It is a fundamental principle that the courts, much less county clerks, should not interfere with the contractual rights set forth in a mortgage agreement:

> To treat this mortgage as a mechanic's lien, as the Appellate Division did, would constitute an impairment of the obligations of the contract that the parties chose to make. Absent clear statutory authorization to do so, the court should not interfere with such rights.

*W. L. Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 499 (1978).

An agreement entered into by an agent pursuant to authority granted by the agency agreement or by instruction of the parties is valid and enforceable. *99 Commercial Street Inc. v. Goldberg*, 811 F.Supp. 900, 906 (S.D.N.Y. 1993). Indeed, the public policy of New York requires that there be liberal use and judicial recognition of the efficacy of principal and agency relationships. *See Arens v. Shainswit*, 37 A.D.2d 274 (1st Dep't), *aff'd* 29 N.Y.2d 663 (1971).

It is clear from the text of a MERS Mortgage that the intent of the parties is to designate MERS as the mortgagee and for MERS to serve as the common nominee or agent for MERS Member lenders and their successors and assigns. Hultman Dec. at ¶ 20. MERS is also vested with various explicit powers to act with respect to the mortgage and the secured real estate as previously discussed.

Moreover, Debtor ignores the clear direction of RPL §257 which provides as follows:

> All covenants contained in any grant or mortgage of real estate **bind** the heirs, executors, administrators, **successors and assigns**, of the grantor or mortgagor, and **inure to the benefit of** the heirs, executors, administrators, **successors and assigns** of the grantee or mortgagee in the same manner and to the same extent, and with like effect as if such heirs, executors, administrators, **successors**

> **and assigns were so named** in such covenants, unless otherwise in said grant or mortgage expressly provided. (Emphasis added).

Contrary to Debtor's erroneous and baseless speculation about MERS' authority to act on behalf of the original lender, and its successors and assigns in Debtor's Supplemental Affirmation in Opposition dated December 20, 2010, RPL § 257 expressly supports MERS' authority to act on behalf of such unnamed successors and assigns.

## CONCLUSION

In light of the foregoing, Debtor's Opposition lacks merit and should be dismissed. MERS respectfully requests that the Court grant Select Portfolio's Motion Seeking to Terminate the Automatic Stay and find that MERS' possessed the requisite authority to execute an assignment of mortgage to US Bank in this matter and grant such other relief as the Court deems just.

**DATED**:    December 23, 2010            **HISCOCK & BARCLAY, LLP**

By:  /s/ J. Eric Charlton
       J. Eric Charlton

One Park Place
300 South State Street
Syracuse, New York 13202-2078
Telephone: (315) 425-2716
Facsimile: (315) 425-2701
E-mail:  echarlton@hblaw.com

Charles C. Martorana, Esq.
Jessica M. Baker, Esq.
1100 M&T Center
Three Fountain Plaza
Buffalo, New York 14203
Telephone: (716) 566-1512
Facsimile: (716) 566-1301
E-mail:  cmartorana@hblaw.com

*Attorneys for Mortgage Electronic Registration Systems, Inc.*